## A93A2233. KONG et al. v. SHEARSON LEHMAN HUTTON MORTGAGE CORPORATION.
(438 SE2d 132)

BLACKBURN, Judge.

The appellants, Chun and Michelle Kong, appeal from the trial court's confirmation of the judicially ordered resales of four town-homes foreclosed upon pursuant to the power of sales contained in four separate deeds to secure debt acquired by the appellee, Shearson Lehman Hutton Mortgage Corporation (Shearson), formerly Shearson Lehman Mortgage Corporation.[1] The sole issue presented in this appeal is whether, in confirming the resales, the trial court erred as a matter of law in its construction of OCGA § 44-14-161 (b).

---

[1] Shearson acquired the deeds to secure debt through a series of successive transfers from the original mortgagee, Nationwide Lending Group, Inc.

Sandra Frady, the original mortgagor, purchased four substantially identical townhomes in Rockdale County on September 27, 1985, executing security notes in the amount of $52,938 and deeds to secure the indebtedness on each of the properties in favor of the original mortgagee, Nationwide Lending Group, Inc. Frady subsequently transferred her interest in the properties to her former husband, Charles Frady, on May 1, 1989, pursuant to a property settlement agreement in their divorce action. On May 2, 1989, the Kongs acquired the townhomes through a transfer from Charles Frady.[2] Thereafter, payments were not made pursuant to the terms of the security notes, and the notes were declared in default. After notice and advertisement, Shearson conducted nonjudicial foreclosure sales of the properties on June 4, 1991.[3] As the sole bidder, Shearson purchased each of the properties for $41,500, and since that time, has been in possession of the townhomes.

On July 1, 1991, Shearson reported the nonjudicial foreclosure sales to the Superior Court of Rockdale County pursuant to OCGA § 44-14-161 (a),[4] and petitioned the court for confirmation of the sales. The Kongs responded to the petition, opposing confirmation based upon the alleged failure of the foreclosure sales to produce the true market value of the properties. During the consolidated evidentiary hearing of October 2, 1992, on the confirmation of the sales, Shearson's expert opined that the properties were each sold at the true market value of $41,500. The expert testimony presented by the Kongs showed that the true market value of each of the properties at the time of the June 4, 1991 sales was $52,500. At the conclusion of the confirmation hearing, the trial court verbally set aside the original sales and ordered resales of the properties without intimating the fair market value of the properties or the basis for its refusal to confirm the sales. The Kongs did not appeal the trial court's decision.

After additional notice and advertisement, Shearson conducted resales of the foreclosed properties on January 5, 1993. Shearson was again the sole bidder, and purchased Unit 627 for $46,000, Unit 629 for $48,000, and Units 631 and 635 each for $48,500.[5] Within 30 days of the resales, Shearson reported the sales to the court and requested

---

[2] In her response to Shearson's application for confirmation, Sandra Frady maintains that the Kongs assumed the outstanding indebtedness on the properties as a result of the transfer of the properties from Charles Frady and this loan assumption was approved by Shearson. Neither Sandra Frady nor Charles Frady are involved in this appeal.

[3] At the time of the initial foreclosure sales, Shearson maintains that the outstanding indebtedness on each of the properties was approximately $51,501.47.

[4] Under this statute, within 30 days of the foreclosure sale, a report of the sale must be made to the judge of the superior court of the county where the land is located.

[5] At the time of the resales, Shearson asserts that the outstanding indebtedness was $65,283.23 on each property.

confirmation of the resales. After a hearing on March 4, 1993, where the evidence produced indisputably showed that the properties were purchased for their true market value on the date of the resales, the trial court confirmed the resales by written order of May 25, 1993. This appeal followed.

The Kongs assert that the trial court erred in its construction of OCGA § 44-14-161 (b). The Kongs maintain that under this statute the trial court should have required Shearson to show the true market value of the properties on the date of the initial foreclosure sales. To conclude otherwise, they contend, would unfairly hold them accountable for the subsequent decline in the value of the properties after the initial sales. We disagree.

"To confirm a foreclosure sale of real estate, without legal process, '(t)he court shall require evidence to show the true market value of the property sold under the powers [of sale contained in the deed to secure debt] and shall not confirm the sale unless it is satisfied that the *property so sold brought its true market value on such foreclosure sale.*' OCGA § 44-14-161 (b)." (Emphasis supplied.) *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454 (1) (415 SE2d 4) (1992). OCGA § 44-14-161 is in derogation of common law and must be strictly construed. *Bentley v. North Ga. Production Credit Assn.*, 170 Ga. App. 361 (1) (317 SE2d 339) (1984). The issue in a confirmation proceeding is whether the property sold brought, *at the time of the sale sought to be confirmed*, its true market value;[6] what the property may have brought or what it may have been regarded as being worth on the market at a time relative to the sale is not controlling. See *Fleming v. Fed. Land Bank of Columbia*, 148 Ga. App. 765 (252 SE2d 653) (1979); *Thompson v. Maslia*, 127 Ga. App. 758, 764 (195 SE2d 238) (1972). In addition, the seller of the foreclosed property is not the insurer of its market value at the time of a judicially ordered resale.

Applying this interpretation of OCGA § 44-14-161 (b) to the facts of the case sub judice, we must conclude that the trial court did not err as a matter of law in confirming the resales based upon the undisputed evidence of the true market value of the properties on the date of the resales. Since the initial foreclosure sales were set aside, those sales were no longer binding, and the parties were returned to the posture they occupied prior to the initial sales. Cf. *Rogers v. Fidelity Fed. Savings &c. Assn.*, 180 Ga. App. 330 (349 SE2d 7) (1986).

---

[6] True market value, which is often used interchangeably with fair market value, is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so. *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258 (1) (424 SE2d 889) (1992).

The resales were the only viable sales sought to be confirmed by Shearson at the March 4, 1993 hearing, and OCGA § 44-14-161 (b) specifically limits the determination of the true market value of foreclosed property to the sale sought to be confirmed. While the Kongs argue that they should not bear the loss from the decline in the value of the properties after the initial foreclosure sales, the initial sales were not confirmed at their request. They did not appeal the trial court's order setting aside the initial foreclosure sales and directing Shearson to resell the foreclosed properties, and cannot now complain merely because the resales of the properties did not bring the amounts that they desired.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 9, 1993 —
RECONSIDERATION DENIED NOVEMBER 22, 1993 — 

*Wood & Perry, Jere F. Wood,* for appellants.
*Campbell, Martin & Manley, David B. Manley III, Kimberly E. Hall,* for appellee.