## A04A0032. McCAIN et al. v. GALLOWAY.
### (600 SE2d 449)

ANDREWS, Presiding Judge.

Tyler McCain and Neel Creech, Jr. appeal from the trial court's order confirming Galloway's nonjudicial foreclosure sale pursuant to OCGA § 44-14-161, contending that Galloway lacked standing and authority to initiate the foreclosure proceeding and that the fair market value of the property was not proven.

A confirmation proceeding is a statutory proceeding limited to determining only that the sale was properly advertised and brought the fair market value of the land on the date of sale. *Harris & Tilley, Inc. v. First Nat. Bank &c.*, 157 Ga. App. 88, 91 (5) (276 SE2d 137) (1981); see also *Wall v. Fed. Land Bank of Columbia*, 240 Ga. 236, 237 (1) (240 SE2d 76) (1977); *Kong v. Shearson Lehman Hutton Mtg. Corp.*, 211 Ga. App. 93, 95 (438 SE2d 132) (1993).

Value on the date of sale is a factual question to be resolved by the trier of fact, which is the judge in a confirmation proceeding. *Thompson v. Maslia*, 127 Ga. App. 758, 764 (4) (195 SE2d 238) (1972). The trial judge's findings and conclusions have the effect of a jury verdict and when that finding is based upon conflicting evidence, it should not be disturbed by a reviewing court if there is any evidence to support it. *Fayette Promenade, LLC v. Branch Banking &c. Co.*, 258 Ga. App. 323, 324 (574 SE2d 319) (2002); *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454 (1) (415 SE2d 4) (1992).

Further, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment. *Sparti v. Joslin*, 230 Ga. App. 346, 348 (3) (a) (496 SE2d 490) (1998).

Viewed in favor of the trial court's findings, the evidence was that Galloway, through his company Southern Star Venture, Inc. (Southern Star), purchased 1.93 acres in Paulding County in 1993 for $180,000. At that time, the property contained only a house and auto repair shop. In 1997, Galloway borrowed $357,500 on the property from Westside Bank & Trust, executing a Deed to Secure Debt. Galloway then invested this money in the property to build mini-warehouses and make other improvements and testified that, including the purchase price and money invested in the property, had all the rental units been rented, the property might have been worth $700,000 at that time.[1]

---

[1] In fact, only 23 of the 80 mini-warehouses were rented at the time of Galloway's sale to McCain and Creech, Jr.

On December 1, 1999, Galloway, through Southern Star, sold the property to McCain and Creech, Jr. for $575,000, which Galloway testified was the fair market value of the property at that time. McCain and Creech, Jr. paid $50,000 in earnest money and then borrowed $350,000 from SunTrust Bank, secured by a first mortgage on the property. The remaining $175,000 was borrowed from Galloway by McCain and Creech, Jr., secured by a second mortgage.

On October 10, 2000, Galloway assigned the note and second mortgage of McCain and Creech, Jr. to Bartow County Bank as collateral for other unrelated debts. Because of scrivener's errors, a Corrective Collateral Assignment was signed by Galloway and Bartow County Bank on December 1, 2000. It stated that as long as Galloway remained in good standing regarding his note with Bartow County Bank, he "shall retain all rights under the security deed and note" of McCain and Creech, Jr.

On September 20, 2001, Galloway and Bartow County Bank signed a third agreement regarding the assignment stating that the bank had made a new loan to Galloway secured by real estate and that previously Galloway had made the collateral assignment to the Bank of a deed to secure debt and note of McCain and Creech, Jr. Further, this agreement stated that McCain and Creech, Jr. were in default and Galloway and the Bank wished to "clarify their understanding of the treatment of this collateral assignment." In pertinent part, the Bank agreed, upon Galloway's request, "to execute and deliver to Galloway an assignment of the McCain and Creech note and security deed sufficient to allow Galloway to sue McCain and Creech or otherwise pursue collection of the debt or foreclosure of the security deed."

It is not disputed that McCain and Creech, Jr. made no payments to Galloway or Bartow County Bank on this note and second mortgage and defaulted on SunTrust's first mortgage.[2]

Prior to initiating foreclosure of his second mortgage, in November 2001, Galloway sued McCain and Creech, Jr. on the debt in Fulton County State Court. In defense and counterclaim, McCain and Creech, Jr. asserted fraud in the inducement and other claims. That lawsuit is still pending. In January 2003, McCain and Creech, Jr. sued Galloway in Cobb County Superior Court, seeking to enjoin Galloway's foreclosure, based on fraud and other defenses already asserted in the Fulton suit. The restraining order was denied.

Notice of foreclosure of the second mortgage was advertised by Galloway, beginning on December 16, 2002. The advertisement reflected that the sale was subject to SunTrust's outstanding first

---

[2] Asked if he had paid Galloway any money, McCain testified "[n]ot one dime."

mortgage. On February 4, 2003, the property was sold at public auction, with Galloway submitting the only bid, which was $331,744.73, $10,000 over and above SunTrust's first mortgage balance. Neither McCain nor Creech, Jr. attended the sale. On May 5, 2003, SunTrust foreclosed on the first mortgage, with the sole bidder being 3156 Hwy. 92 Investments, LLC, an entity set up by McCain's brother for that purpose. McCain serves as the registered agent of this company.

1. Appellants contend that Galloway failed to prove that Bartow County Bank had reassigned the note and security deed to him prior to the foreclosure.

This argument is premised upon a hearsay objection made below to a portion of Plaintiff's Exhibit 3, a letter of April 15, 2003, from the bank to Galloway's attorney regarding release of the bank's assignments. That objection was sustained. Here, however, the argument is that two other pages of that exhibit, consisting of the bank's direction to the clerk to mark the assignments satisfied because the debt had been fully paid, are also hearsay.

Even assuming, without deciding, that these specific documents were hearsay, Galloway also testified that the debt secured by the assignments had been paid and the assignments, on their faces, gave Galloway the right to pursue foreclosure without further action by the bank.

Further, even without this evidence, "[t]he issue [of] whether [Galloway] was a real party in interest is not relevant to this confirmation proceeding, which was commenced in accordance with OCGA § 44-14-161 (a) by the person instituting the foreclosure proceedings[, i.e., Galloway]." *Sparti v. Joslin,* supra at 346 (1). See *Vlass v. Security Pacific Nat. Bank,* 263 Ga. 296-297 (1) (430 SE2d 732) (1993); *Harris & Tilley, Inc.,* supra at 91 (5).

2. McCain and Creech, Jr. also argue that there was insufficient evidence that Galloway's bid represented fair market value as of the date of the sale.

As acknowledged by McCain and Creech, Jr., " '[a]s a general rule the price brought at a public sale, after proper and lawful advertisement, is prima facie the market value of the property sold, absent anything to indicate that there was chilling of the bidding, fraud, or the like adversely affecting the sale.' *Thompson v. Maslia,* [supra,] and cit." *Wachovia Mtg. Co. v. Moore,* 138 Ga. App. 101 (225 SE2d 460) (1976), overruled on other grounds, *Fed. Deposit Ins. Corp. v. Ivey-Matherly Constr. Co.,* 144 Ga. App. 313, 315 (1) (241 SE2d 264) (1977).

McCain and Creech, Jr. basically reargue the evidence presented to the trial court and rely partly upon the failure of Galloway to present an official appraisal of the property. Pursuant to OCGA § 24-9-66, however, "[d]irect testimony as to market value is in the

nature of opinion evidence. One need not be an expert or dealer . . . but may testify as to its value if he has had an opportunity for forming a correct opinion."

Galloway, as fully set out above, testified about his experience with the property, how much he had invested in it, how much he borrowed against it, and its condition at the time of the foreclosure sale.[3] Additionally, McCain testified that he "wouldn't want to pay a whole lot more than four hundred thousand" for the Paulding property. The property was appraised by the tax assessor at $194,200. Galloway stated his opinion that he bid the fair market value for the property. This evidence was sufficient to show fair market value at the time of the sale. *Iffland v. Lancaster*, 176 Ga. App. 449, 450 (3) (336 SE2d 350) (1985); *Harris & Tilley, Inc.*, supra at 89-90 (1); *Dept. of Transp. v. Brown*, 155 Ga. App. 622, 623 (2) (271 SE2d 876) (1980); see *Dixon v. Williams*, 177 Ga. App. 702, 703 (340 SE2d 286) (1986); *Murdock v. Godwin*, 154 Ga. App. 824, 827 (6) (269 SE2d 905) (1980).

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MAY 20, 2004.

*Thomas N. Brunt*, for appellants.
*Reid G. Kennedy*, for appellee.

---

[3] According to Galloway, McCain and Creech, Jr. had allowed the condition of the property to deteriorate and had not made efforts to fully lease the buildings and mini-warehouses.