A02A1358. FAYETTE PROMENADE, LLC et al. v. BRANCH BANKING & TRUST COMPANY.
(574 SE2d 319)

MIKELL, Judge.

On April 7, 1999, Fayette Promenade, LLC executed a security deed in favor of Branch Banking & Trust Company's predecessor in interest conveying an interest in three partially developed tracts of land totaling thirty acres in Fayette County as security for a loan of $5,000,000. Ronald L. Lozoff guaranteed the debt. One 3.15-acre tract of prime frontage was subsequently sold for $1,700,000.

---

[1] *Colkitt v. State*, 251 Ga. App. 749, 752 (2) (555 SE2d 121) (2001).
[2] *Hull v. State*, 265 Ga. 757, 763 (14) (462 SE2d 596) (1995).

Fayette Promenade then defaulted on the note. Branch Banking gave notice of default and intent to foreclose and properly advertised the pending sale of the remaining property. Pursuant to the power contained in the security deed, Branch Banking conducted the foreclosure sale of the property on July 3, 2001, and submitted the only bid, of $3,000,000. Branch Banking sought confirmation of the sale pursuant to OCGA § 44-14-161. Following a hearing, the superior court confirmed the sale. Fayette Promenade and Lozoff appeal from the order of confirmation, arguing that there was no evidence that the amount bid at the foreclosure sale was at least the true market value on the date of the sale. We disagree and affirm.

Value on the date of sale is a factual question to be resolved by the trier of fact.[1] In a proceeding for confirmation of a foreclosure sale of real property,

[t]he judge sits as a trior of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trior of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[2]

In addition, we do not determine witness credibility or weigh the evidence, and we view the evidence in the light most favorable to support the trial court's judgment.[3] So viewed, the evidence presented at the hearing shows that Dennis Carr twice appraised the property at issue for Branch Banking, once in 1999 and again in May 2001. He testified that he appraised the property in 1999 for $5,000,000; however, since that time, the 3.15-acre tract was sold for a shopping center development and additional acreage had been used for road construction and utilities, leaving 23.2 acres.

Carr concluded that the value of the remaining land was $3,000,000. Carr utilized the "subdivision analysis or development approach" in appraising the property based on its potential as a multi-use development. According to Carr, this methodology requires a two-step process: first, the retail value of each component is determined, and second, appropriate expenses are deducted from retail value to arrive at market value. Carr testified he utilized this same methodology when performing the 1999 appraisal.

In determining retail value, Carr divided the land into three categories: primary, or the most prominent commercial sites; secondary,

[1] *Thompson v. Maslia*, 127 Ga. App. 758, 764 (4) (195 SE2d 238) (1972).

[2] (Citations and punctuation omitted.) Id.

[3] *Sparti v. Joslin*, 230 Ga. App. 346, 348 (3) (a) (496 SE2d 490) (1998).

or commercially viable but lacking prime road frontage; and the rear acreage, suitable for third tier uses such as offices. Carr then considered sales of comparable commercial acreage and calculated a total retail value of $4,800,000. To determine present market value, Carr deducted eight percent for real estate commissions and marketing costs, one percent for administration, fifteen percent for risk and profits, and twelve percent for conversion of the funds into present value, assuming the property could be sold within two years. After deductions, Carr calculated fair market value at $2,988,000, which he rounded up to $3,000,000. Carr gave the following example to illustrate the distinction between full retail value and market value after deductions:

> A: [I]f I'm going to buy ten condominium units and they're each worth $100,000 their aggregate value is a million dollars; but if I buy those I'm not going to pay a million dollars for them because it's going to take me some time to sell them off, I'm going to have to pay real estate commissions, I'm going to have to pay holding costs, and also I'm going to have to have incentive to do this venture. The million dollars may be retail but that's not the market value of the ten units in bulk.
> Q: And do you have a bulk situation here with this property?
> A: Yes. You have a bulk land tract that has potential to sell off spin sites.

Carr concluded that the purchaser of the 23.2 acres would likely be a developer or some type of entrepreneur.

The hearing was adjourned on September 28, 2001, and recommenced on November 1, 2001. In the interim, Fayette Promenade and Lozoff hired an appraiser, who testified that he also used the bulk sale valuation method of assessing fair market value, requiring him to contemplate sale of the property in bulk to a single purchaser. Focusing on the initial sale of the original 30 acres in December 1998 as a comparable, this appraiser valued the property at issue at $4,052,622.

Citing *First Nat. Bank &c. v. Childress-Ross Properties*[4] and *Wheeler v. Coastal Bank*,[5] Fayette Promenade and Lozoff argue that the deductions taken by Carr were impermissible in computing fair market value and necessitate reversal of the trial court's order. We disagree.

---

[4] 189 Ga. App. 765 (377 SE2d 533) (1989).
[5] 182 Ga. App. 112 (354 SE2d 694) (1987).

In *Wheeler*, this court held that in determining market value of property, considerations such as "the financial responsibility for or the nature and amount of expenses and closing costs to be paid to others in connection with buying or selling it" are irrelevant.[6] However, in *Marett Properties v. Centerbank Mtg. Co.*,[7] we affirmed an order confirming a foreclosure sale in which the bank's expert determined the fair market value of the property by using a bulk sale analysis, which included factoring into account various costs such as carrying costs, reasonable profit, and expenses.[8] *Marett* distinguished *Childress-Ross* as follows:

> In *First Nat. Bank &c. v. Childress-Ross Properties*, [supra], this court acknowledged that the true market values of properties held by multiple security instruments could not be wholesaled in order to compensate for additional expenses incurred in selling the properties individually. Because the properties " 'were handled by separate security instruments, separate loans, separate legal descriptions and separate appraisals,' the properties involved in each of the seven foreclosure sales would have to be considered separately." Id. at 766. The *Childress-Ross* case distinguished *Marion G. Davis, Inc. v. Cameron-Brown Co.*, 177 Ga. App. 646 (340 SE2d 216) (1986) by stating that: "In that case, there was only one security deed, pertaining to an entire, partially constructed condominium complex. Noting that the security deed contained no language requiring the lender to sell the property in individual units, the court simply held that the superior court was not required to add together the true market values of each of the separate units but was permitted to treat the property as a 'single investment opportunity' in determining its true market value." *Childress-Ross* at 766-767.[9]

In the instant case, as in *Marett* and *Cameron-Brown*, the security deed did not require that the property be sold piecemeal, and the bulk sale or "development" analysis was permissible. The true market value of property intended for commercial development may be analyzed as "a 'single investment opportunity.' "[10] "In establishing the true market value of such a single investment opportunity, an expert

---

[6] Id. at 114 (1).
[7] 204 Ga. App. 265 (419 SE2d 113) (1992).
[8] Id. at 266-267.
[9] Id. at 266.
[10] Id., citing *Harwell v. First Fed. Sav. &c. Assn.*, 245 Ga. 757 (267 SE2d 229) (1980); *Classic Enterprises v. Continental Mtg. Investors*, 135 Ga. App. 105 (217 SE2d 411) (1975).

must apply his own knowledge and ideas in order to reach an opinion as to the market value of a project."[11]

> Although appellant[s] present[ ] a serious challenge to the means by which the creditor's expert arrived at his opinion as to value, the expert provided the court with the basis for his opinions. [As] it appears that his opinion.[was] not based on sheer speculation, an appellate court cannot second.guess any methodology utilized to reach the opinion.[12]

There is evidence to support the trial court's holding that the amount bid at the foreclosure sale was at least the true market value on the date of the sale. Therefore, we affirm the order of confirmation.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 17, 2002 —
RECONSIDERATION DENIED NOVEMBER 12, 2002

*Michael E. Sumner*, for appellants.
*Smith & Moore, Howell Hollis III*, for appellee.

