## A09A0797. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al. v. CASEY.

### (686 SE2d 807)

DOYLE, Judge.

This appeal arises from the trial court's denial of a motion to exclude expert testimony filed by the Board of Regents of the University System of Georgia ("BOR") d/b/a the Medical College of Georgia ("MCG") and Dr. Paul C. Houle (collectively "the Appellants") in an action alleging assault on the part of Dr. Houle and various negligence claims against BOR and Dr. Houle by David Casey.[1] On appeal, the Appellants contend that the trial court erred by denying their motion in limine to exclude the expert testimony of Dr. Allen E. Rubenstein under OCGA § 24-9-67.1 (b).[2] For the reasons that follow, we affirm.

"The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[3]

The record shows that on October 17, 2000, Casey underwent a C4-C7 laminectomy, a procedure to fuse parts of his spinal column together. While in recovery, Dr. Houle responded to Casey's room to investigate his complaints of pain. Dr. Houle attempted to perform a grip test, and he contended that Casey squeezed his fingers with such force that Dr. Houle was afraid they would break. Dr. Houle deposed that he "pulled away as hard as [he] could to get away from [Casey]." Casey deposed that he barely touched Dr. Houle's fingers, when Dr. Houle became upset and threw Casey's arm back. Casey explained that while he had been in pain prior to his encounter with Dr. Houle, the pain was excruciating afterward. Dr. Houle then refused to treat Casey further and called another doctor to assess him.

A portion of Casey's medical records explains that

> Peter Brown, M.D. (chief resident) was called to evaluate the patient who began to complain of numbness and weakness in his lower extremities. When this was identified, Dr. Brown inspected the wound but did not find any obvious bleeding or swelling and arranged an emergency MRI. The

---

[1] Casey's complaint also alleged intentional infliction of emotional distress and various instances of medical negligence against BOR and Dr. Houle, along with various other treating physicians; however, the medical negligence claims were dismissed earlier in the proceedings because Casey failed to file the required expert affidavit. See *MCG Health v. Casey*, 269 Ga. App. 125, 128 (603 SE2d 438) (2004).

[2] The trial court granted the Appellants a certificate of immediate review, and we granted the Appellants' application for interlocutory appeal.

[3] *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

> first scout images appeared[,] revealing a large hematoma in the operative bed with compression of the spinal cord. I spoke with Dr. Brown as these images were being obtained[,] and we agreed to terminate the study and take the patient directly to the operating room for evacuation of hematoma.

Despite the emergency surgery to address the post-surgical complication of the hematoma, Casey experienced, among other things, extreme weakness in his arms to the point he was unable to tie his shoes, hold items, or clothe himself.

Pursuant to OCGA § 24-9-67.1 (b),

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.

OCGA § 24-9-67.1 (f) states that Georgia courts may employ federal authority, including *Daubert v. Merrell Dow Pharmaceuticals*,[4] when determining whether expert testimony meets the requirements of OCGA § 24-9-67.1 (b).

1. First, the Appellants argue that the trial court abused its discretion by determining that Dr. Rubenstein's expert testimony was based upon sufficient facts and data pursuant to OCGA § 24-9-67.1 (b) (1). Specifically, the Appellants contend that Dr. Rubenstein's testimony should have been excluded because it was based on a limited number of cases of epidural hematomas that he had treated over the course of his career, some of which were the result of trauma to the patient, but none of which he could say for certain was the result of a traumatic injury to the patient's arm. We disagree.

As an initial matter, the Supreme Court of Georgia has determined that the portion of OCGA § 24-9-67.1 (b) (1) requiring that the facts and data upon which an expert's testimony is based be limited to those facts or data "which are or will be admitted into evidence at

---

[4] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

the hearing or trial" is contradictory to other portions of that statute.[5] Based on that determination, the Supreme Court approved of a trial court's decision to strike that language from the statute when assessing whether an expert's testimony meets the requirements of OCGA § 24-9-67.1 (b).[6] Accordingly, to the extent that the Appellants contend that Dr. Rubenstein's testimony should have been excluded because it was based in part on his previous experience with other cases of epidural hematomas, which cases were not subject to review by the court or admission into evidence, we find their argument unpersuasive.

To the extent that the Appellants contend that Dr. Rubenstein's testimony simply was not based on sufficient facts and data (regardless of admissibility) in order to meet the requirement of OCGA § 24-9-67.1 (b) (1), we find their argument similarly unpersuasive. Dr. Rubenstein deposed that his opinion of the cause of Casey's epidural hematoma was derived from applying his medical knowledge and his experience with previous cases to Casey's medical records and deposition testimony regarding the incident given by Dr. Houle and Casey. Thus, the trial court correctly determined that Dr. Rubenstein's opinion was based on sufficient facts and data in order to be admissible at trial.[7]

2. The Appellants also contend that the trial court abused its discretion by determining that Dr. Rubenstein's expert testimony was the product of reliable principles and methods that he properly applied to the instant case pursuant to OCGA § 24-9-67.1 (b) (2) and (3). The Appellants also contend that the trial court ignored judicial precedent by allowing Dr. Rubenstein's testimony. We discern no abuse of discretion on the part of the trial court.

Dr. Rubenstein reviewed the medical records of the case as well as the deposition testimony of Dr. Houle and Casey before using a differential diagnosis to explain his theory of the cause of Casey's epidural hematoma.

> [A] differential diagnosis . . . is a method by which a physician determines what . . . caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes

---

[5] See *Mason v. The Home Depot U.S.A.*, 283 Ga. 271, 275 (2) (658 SE2d 603) (2008).

[6] See id. at 275-276 (2).

[7] See, e.g., *Smith v. BMW North America*, 308 F3d 913, 919-920 (II) (A) (8th Cir. 2002).

based on a physical examination, clinical tests, and a thorough case history.[8]

This type of analysis meets the requirements of *Daubert* if the expert makes scientifically valid decisions when he determines which potential cause should be ruled in or ruled out as the cause in the specific case.[9] Whether to allow such testimony is made on a case-by-case basis by the court.[10]

In this case, the trial court denied the motion in limine to exclude Dr. Rubenstein's testimony based on his use of differential diagnosis because he explained, based on his prior experiences and medical knowledge as applied to the medical records, timeline, and testimony given in this particular case, why he believed that Casey's interaction with Dr. Houle caused the epidural hematoma either to form or to worsen to the point that it caused the damage suffered by Casey.[11] Based on this reasoning, we cannot say that the denial of the motion was an abuse of the sound discretion of the trial court.[12]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 10, 2009.

*Thurbert E. Baker, Attorney General, Joan G. Crumpler, Assistant Attorney General, Brian F. Dorsey*, for appellants.
*George D. Bush, Martin C. Puetz*, for appellee.

---

[8] (Punctuation omitted.) *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828, 829-830 (1) (652 SE2d 819) (2007).

[9] See *Hawkins v. OB-GYN Assoc., P.A.*, 290 Ga. App. 892, 893 (1) (660 SE2d 835) (2008).

[10] See *Ruggiero v. Warner-Lambert Co.*, 424 F3d 249, 254 (II) (2d Cir. 2005).

[11] See *McCullock v. H. B. Fuller Co.*, 61 F3d 1038, 1043-1044 (I) (B) (2d Cir. 1995).

[12] See id.; *CSX Transp. v. McDowell*, 294 Ga. App. 871, 873-875 (1) (b) (670 SE2d 543) (2008) (holding that the trial court was authorized to deny defendant's motion in limine to exclude expert testimony). Compare with *Hawkins*, 290 Ga. App. at 894-895 (1) (holding that the trial court did not err in granting a directed verdict for lack of evidence because the patient's expert's diagnosis was not supported by the testimony given by the witnesses at trial).