A10A0685. THE HUDSON TRIO, LLC et al. v. THE BUCKHEAD COMMUNITY BANK.
(696 SE2d 372)

MIKELL, Judge.

The Hudson Trio, LLC, Starke V. Hudson, and Joe R. Hudson (hereinafter "appellants") appeal from the Madison County Superior Court's order denying their motion for new trial following the confirmation of a foreclosure sale conducted by The Buckhead Community Bank d/b/a The Forsyth Community Bank ("appellee"). Finding no error, we affirm.

In confirming a nonjudicial foreclosure sale under OCGA § 44-14-161, the trial court "shall require evidence to show the true

---

market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[1] In such proceedings, the trial court sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict.[2] Thus, we will not disturb the trial court's decision if there is any evidence to support it.[3] Additionally, "we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment."[4]

So viewed, the evidence shows that in November 2005, Homestead Bank loaned the Hudson Trio $2,721,000 in exchange for a deed to secure debt, which conveyed a security interest to Homestead Bank in 214.8 acres of land set for development as a residential subdivision. The debt was personally guaranteed by appellants Starke and Joe Hudson, and Tiffany Hudson.[5] In April 2007, Security Bank of Gwinnett County, as the successor to Homestead Bank, recorded a modification of the deed to secure debt, increasing the loan amount by $659,000, to $3,380,000. In October 2008, Security Bank of Gwinnett County assigned the security deed to appellee. The Hudson Trio defaulted on the loan, and appellee declared the outstanding debt immediately due and payable. Thereafter, pursuant to the power of sale provision contained in the security deed and modification, appellee foreclosed on the property. On February 3, 2009, the property was sold to appellee, the sole bidder, for $1,970,000.

Appellee then filed the instant application for confirmation of sale under power. Following an evidentiary hearing, the trial court confirmed the sale, finding that the proceeding was regular and that the property sold for $630,000 more than its true market value. The trial court rejected the analysis of appellants' expert witness and concluded that because bulk sales were involved, appellee's expert, Joseph Conlon, properly used the discounted cash flow analysis to determine the fair market value.

1. Appellee moves to dismiss this appeal, contending that appellants' notice of appeal was untimely because their motion for new trial was, in substance, a motion for reconsideration and, therefore, did not extend the time in which to file the notice of appeal. In this

---

[1] OCGA § 44-14-161 (b).

[2] See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180 (1) (622 SE2d 890) (2005), citing *McCain v. Galloway*, 267 Ga. App. 505 (600 SE2d 449) (2004).

[3] *Oates v. Sea Island Bank*, 172 Ga. App. 178 (1) (322 SE2d 291) (1984).

[4] (Citation omitted.) *McCain*, supra. See also *Blue Marlin Dev. v. Branch Banking &c. Co.*, 302 Ga. App. 120, 121 (690 SE2d 252) (2010).

[5] Tiffany could not be located for purposes of service and is not a party to this appeal.

regard, appellee points out that the motion for new trial merely attacked the weight of the evidence and Conlon's opinion. We do not agree. The motion for new trial challenged the sufficiency of the evidence supporting the trial court's order confirming the sale and the admissibility of evidence.[6] Specifically, appellants alleged at the hearing on the motion that Conlon's methodology and conclusions were speculative and unsubstantiated and, therefore, insufficient to prove the true market value of the property. Appellants also alleged that the trial court erred in admitting Exhibit L (listings in Madison County as of June 12, 2009) because the homes were listed four months after the foreclosure date and were not comparable sales. "A motion for a new trial is a proper means of seeking a retrial or reexamination, in the same court, of an issue of fact, or of some part or portion thereof, after decision by a jury or a decision by the court thereon."[7] "There is no magic in the nomenclature of a motion or other pleading."[8] We construe a pleading to serve the best interests of the pleader, and judge it by function rather than by name.[9] So construed, we find that the motion for new trial was procedurally proper, and that the time for filing the notice of appeal had not expired.[10]

2. Appellants first contend that the trial court erred in finding that the price paid for the property was its true market value on the date of the foreclosure sale. In this regard, appellants argue that the trial court erred in relying on Conlon's opinion because it was defective in several ways, including that he did not use the most recent comparable sales; he used inflated profits that were speculative and not supported by the current market; and he used only single lot comparable sales instead of comparable bulk sales, which were available.

At the confirmation hearing, Conlon testified that he appraised the property at issue on February 3, 2009, the sale date, for $1,340,000; the appraisal was not printed and sent out until February 18, 2009, so appellee did not have the appraisal in hand on the date of the sale. Conlon clarified that he inspected the property on February 4, 2009, but that he was familiar with it, having appraised it for a previous client. Conlon utilized the "income approach or discounted developers analysis" instead of the "cost approach" or "sales comparison" approach because there was a significant oversupply of lots, the land could not feasibly be developed, and there

---

[6] See, e.g., *Gully v. Glover*, 190 Ga. App. 238, 239 (1) (378 SE2d 411) (1989).

[7] (Citations, punctuation and emphasis omitted.) Id.

[8] (Citation omitted.) Id.

[9] See id.

[10] See id. Compare *Bank South Mtg. v. Starr*, 208 Ga. App. 19 (429 SE2d 700) (1993).

were no comparable bulk sales of 111 lots. In utilizing the discounted developers approach, Conlon first determined that the retail value of each individual lot was $30,000, including a 15 percent adjustment for market conditions, which Conlon testified was required because the "values of homes in the Madison County area have deteriorated." In reaching this amount, Conlon explained that he looked at comparable subdivisions and the demand for homes/lots in those subdivisions.[11] To determine present market value, Conlon deducted five percent for cost of sales, two and a half percent for real estate costs and contingency, thirteen and a half percent for risk and profits, and thirteen and a half percent for conversion of the funds into present value, assuming the property could be sold within 108 months or nine years. After deductions, Conlon calculated fair market value at $12,500 per lot, or $1,340,000 for the entire property. With regard to investor profit, Conlon explained that a developer would be taking a big risk on a property such as the subject property and that "buyers of [these] type properties expect a higher return or higher profit."

Appellants' expert, Carolyn Anthony, also appraised the subject property on February 3, 2009, but did not issue a report until May 2009. Anthony analyzed thirty-three sales dating back to February 2005, from nine subdivisions in all of Madison County, and determined the market value of each lot on the subject property to be $38,500. Anthony testified that she did not adjust for market conditions because in January 2009, a comparable lot she used in her analysis sold for $35,200; however, it was never listed on the MLS database and she could not say definitively whether the sale was an arms length transaction. To determine present market value, Anthony deducted expenses for real estate costs, legal fees, the estimated holding maintenance fee, and investor profit of five percent, for a retail value of $24,459 per lot, or $2,715,000 for the entire property. Anthony noted that the market showed signs of stabilization because the number of construction permits issued in Madison County had decreased; actual sales in the county had decreased from 2008 to 2009; and the median sales price had increased.

Relying on *Govt. Nat. Mtg. Assn. v. Belue*,[12] appellants contend that Conlon's appraisal is unreliable and inaccurate because he used only four comparable sales, the most recent of which occurred ten months before the foreclosure date. Appellants argue that the trial court should have rejected Conlon's appraisal in favor of Anthony's,

---

[11] Specifically, Conlon looked at seventeen comparable subdivisions within five miles of the subject property, including one where comparable lots were listed at $25,000. He noted that in 2005, those same lots had listed for $45,000.

[12] 201 Ga. App. 661 (411 SE2d 894) (1991).

which used thirty-three comparable sales that occurred over a forty-three-month period preceding the foreclosure, one of which occurred one month before the foreclosure. We disagree.

While appellants are correct that *Belue* notes that a trial court may find more reliable an appraisal relying on comparable sales occurring closer to the foreclosure date,[13] that observation does not change our standard of review in cases such as this: "On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale."[14] Where the evidence is in conflict as to the market value of the property, the trial court's findings will be affirmed if they are supported by any evidence and are not clearly erroneous.[15] Although Conlon relied on fewer comparable sales, the trial court found his appraisal more accurate than Anthony's because his comparable sales were all within five miles of the subject property and occurred within eighteen months of the foreclosure. Anthony's appraisal relied on many more comparable sales, stretching across the entire county and dating back as far as 2005, and it did not adjust for market conditions. And, although Anthony used the most recent sale in her appraisal, we cannot say that the trial court erred in finding that the nature of that sale was questionable and unreliable.

As for appellants' claim regarding Conlon's opinion on investor profit, we note that appellants thoroughly cross-examined him on that opinion and challenged its alleged flaws. Moreover, the record reflects that Conlon's opinion was not speculative; he testified that he spoke to investors, developers, and brokers. Additionally, even though Anthony calculated a different investor profit margin, she did not refute Conlon's number, testifying that investor profit of "anywhere from five to fifteen percent would be reasonable."[16]

As to the remaining issues raised by appellants, those were in dispute throughout the hearing and appellants essentially seek to reargue the evidence presented to the trial court. Conlon stated his opinion as to the fair market value of the property at the time of the sale and explained his methodology. As noted above, appellants thoroughly cross-examined him on that opinion and challenged its alleged flaws.

---

[13] Id. at 662 (1).

[14] (Citation and punctuation omitted.) *Marett Properties v. Centerbank Mtg. Co.*, 204 Ga. App. 265, 267 (419 SE2d 113) (1992).

[15] Id.

[16] See *Fayette Promenade v. Branch Banking &c. Co.*, 258 Ga. App. 323, 325 (574 SE2d 319) (2002) (appraiser's deduction of 15 percent for risk and profit held reasonable).

As this Court has explained numerous times,

> [a]lthough appellants present a serious challenge to the means by which [Conlon] arrived at his opinion as to value, [Conlon] provided the court with the basis for his opinions. As it appears that his opinion was not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion. The superior court had sufficient data in evidence upon which it could apply its own knowledge and ideas so as to derive its own opinion as to the market value of the property at the time of the sale.[17]

Thus, the trial court was authorized to find that the true market value of the property at the time of the sale was $1,340,000.

3. Appellants next contend that the trial court erred in approving the "regularity of the sale" because (a) appellee's appraisal was performed after the sale; and (b) the assignment to a trade name "chilled the sale."

Pursuant to OCGA § 44-14-161 (c), the trial court is required to determine not only whether the property sold brought its true market value, but also to "pass upon the legality of the notice, advertisement, and regularity of the sale." "[W]hen a power of sale is exercised all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith."[18]

(a) Relying on *Adams v. Gwinnett Commercial Bank*,[19] appellants contend that failure to have an appraisal done before the foreclosure sale is a sign of bad faith, indicating a lack of regularity in the sale. While *Adams* states that an appraisal before the sale may evince good faith on the part of the creditor, it does not require a pre-sale appraisal and appellants cite to nothing supporting such a requirement.[20] Moreover, *Adams* is distinguishable. In that case, the property did not bring the true market value and this Court affirmed the trial court's order to resell the property.[21] Here, the property was sold for $630,000 more than its true market value.

---

[17] (Punctuation omitted.) *HSL/La Jolla Belvedere Enterprises v. Fed. Sav. & Loan Ins. Corp.*, 201 Ga. App. 447 (411 SE2d 329) (1991), citing *Armstrong v. California Fed. Sav. & Loan Assn.*, 192 Ga. App. 508, 509 (2) (385 SE2d 113) (1989). Accord *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 115 (1) (684 SE2d 144) (2009); *Peterson v. First Nat. Bank of Atlanta*, 201 Ga. App. 762, 763 (1) (412 SE2d 579) (1991).

[18] (Citation and punctuation omitted.) *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (1) (270 SE2d 867) (1980).

[19] 140 Ga. App. 233 (230 SE2d 324) (1976).

[20] Id. at 234 (3).

[21] Id.

(b) Relying on *Weems v. McCloud*,[22] appellants argue that the trial court erred in confirming the sale because it failed to determine who held the right to foreclose under the assignment of the security deed. In this regard, appellants point out that the security deed was assigned to appellee in its unincorporated trade name, The Forsyth Community Bank, as opposed to the corporate name, The Buckhead Community Bank. Appellants contends this was "a fatal flaw because a [trade name] cannot hold title to real estate and cannot convey title to real estate." Appellants' contention fails as *Weems* is distinguishable.

The assignment provided, in relevant part, that

> THIS TRANSFER AND ASSIGNMENT OF SECURITY DEED AND OTHER LOAN DOCUMENTS (the "Assignment") is made by SECURITY BANK OF GWINNETT COUNTY F/K/A HOMESTEAD BANK, a Georgia banking corporation (the "Assignor") to and in favor of FORSYTH COMMUNITY BANK, A DIVISION OF THE BUCKHEAD COMMUNITY BANK, F/K/A FIRST NATIONAL BANK OF FORSYTH COUNTY, a Georgia banking corporation (the "Assignee").

The notice of sale submitted by "The Buckhead Community Bank d/b/a The Forsyth Community Bank" provided that, "[b]y virtue of the power of sale contained in the Security Deed [as] assigned to FORSYTH COMMUNITY BANK, A DIVISION OF THE BUCKHEAD COMMUNITY BANK, F/K/A FIRST NATIONAL BANK OF FORSYTH COUNTY . . . the [subject property] will be auctioned."

In *Weems*,[23] the appellants/debtors executed two notes to Hamilton Mortgage Corporation, each of which was secured by a tract of land in Gwinnett County. Hamilton Mortgage Corporation transferred a 60.08% interest in these notes and security deeds to The Hamilton National Bank of Chattanooga, which subsequently was declared insolvent. The FDIC was appointed receiver and liquidator of the bank. Thereafter, Hamilton Mortgage Corporation was adjudicated bankrupt and Weems was appointed trustee. Appellants defaulted on the two notes and Weems and the FDIC advertised the two tracts for sale and conducted nonjudicial foreclosure sales of the property. Weems and the FDIC were high bidders at the auction and filed an application for confirmation of the sale. The district court denied confirmation, but granted Weems and the FDIC permission to

---

[22] 619 F2d 1081 (5th Cir. 1980).
[23] Supra.

resell the two tracts of land.[24] Appellants appealed the grant of permission to resell, alleging, inter alia, that the district court failed to consider many of their defenses, including that

> bidding was chilled in that . . . Weems and the FDIC willfully and intentionally caused the sale without explanation in their advertisement concerning how they were empowered to conduct the foreclosure in light of the fact that record title to the security deed was held by Manufacturer's Hanover Trust Company by virtue of assignment from Hamilton Mortgage Corporation.[25]

The Fifth Circuit agreed, finding that "[i]f there was a question as to who held title under the security deed and who was authorized to exercise the power of sale, such a question might affect the bidding. It might also raise an issue relating to the regularity of the sale."[26]

Appellants' reliance on *Weems* is misplaced for several reasons. First, the appellants in *Weems* were not given the opportunity to raise the issue because the lower court struck the defense as irrelevant. Here, the trial court allowed appellants to question the foreclosing attorney at length and present argument on the issue. Second, the circumstances present in *Weems* are wholly distinguishable. In that case, record title was in the name of Manufacturer's Hanover Trust Company, the assignee to the security deed, and the notice of sale did not explain how either the FDIC or Weems, the liquidator/receiver and the trustee, respectively, were empowered to foreclose on the property. In this case, the assignment included both appellee's trade name and its corporate name, and the notice of sale provided that by virtue of its assignment, "FORSYTH COMMUNITY BANK, A DIVISION OF THE BUCKHEAD COMMUNITY BANK, F/K/A FIRST NATIONAL BANK OF FORSYTH COUNTY" was empowered to foreclose on the property. Contrary to appellants' contention, the trial court considered the issue, stating during the hearing that "the chilling of the bidding is the ultimate issue that I will have to decide whether [the issue of the trade name] really has an impact on it or not." In confirming the sale, the trial court implicitly found that the bidding had not been chilled by the *inclusion* of appellee's trade name (with its corporate name) in the

---

[24] Id. at 1083-1084.
[25] Id. at 1090 (II), n. 16.
[26] Id. at 1092 (II).

subject documents. In this regard, we remind appellants of the purpose of a confirmation proceeding:

> The confirmation proceeding is a statutory proceeding which by law determines only that the sale was properly advertised and brought the fair market value of the land. It originated as a means of protecting the debtor from being subject to double payment in cases where the property was purchased for a sum less than its fair market value. The duty of the trial court is to test the fairness of the technical procedure of the actual sale and to insure that it brought at least the true market value; the statute does not undertake to decide controversies between parties as to the amount of the debt, side agreements, or matters in defense of default or in denial of indebtedness, or which might have been the basis of an injunction preventing the foreclosure sale. The confirmation judgment is not a personal judgment and it does not adjudicate the title of the property sold. Except as to the confirmed amount of the sale, it does not establish the liability of any party with regards to the indebtedness.[27]

The proceeding is designed "to protect debtors from deficiency judgments when the forced sale of their property brings less than the fair market value [and] is limited to determining whether the sale was properly advertised and brought the fair market value of the land."[28] Even if the trial court could adjudicate the issue, there is no evidence in the record that inclusion of the trade name on the assignment and notice of sale chilled the sale. Accordingly, we find no merit in this enumeration.

4. Appellants lastly contend that the trial court erred in confirming the sale because the notice and advertisement were not legal. There is no merit in this enumeration as it depends upon a finding that the assignment was defective for the reasons alleged in Division 3, supra.

*Judgment affirmed. Barnes, P. J., and Blackburn, J., concur.*

DECIDED JUNE 7, 2010.

*Victor Y. Johnson*, for appellants.

---

[27] (Citation and punctuation omitted.) *Dorsey v. Mancuso*, 249 Ga. App. 259, 261 (547 SE2d 787) (2001). See also *Shingler v. Coastal Plain Production Credit Assn.*, 180 Ga. App. 539, 541 (2) (b) (349 SE2d 785) (1986).

[28] (Citations and punctuation omitted.) *Dorsey*, supra.

*Bach, Dewberry & Hipes, Kasey C. Libby, Michael C. McGoff*, for appellee.