### A10A1531. 131 RALPH McGILL BOULEVARD, LLC et al. v. FIRST INTERCONTINENTAL BANK.
(699 SE2d 823)

MIKELL, Judge.

Appellants 131 Ralph McGill Boulevard, LLC ("RMB"), Inman Park Properties, Inc. ("IPP"), and Jeffrey M. Notrica ("Notrica") appeal from the Fulton County Superior Court's order confirming a nonjudicial sale of property formerly owned by RMB. The foreclosure sale was conducted by appellee First Intercontinental Bank (the "Bank"). Appellants contend that at the foreclosure sale, the property was sold at less than its true market value. Finding no error, we affirm.

In order to confirm a nonjudicial foreclosure sale, the trial court "shall require evidence to show the true market value of the property sold . . . and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[1] The term "true market value," which is interchangeable with the term "fair market value,"[2] means "the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so."[3] In a confirmation proceeding, the trial court sits as the trier of fact, and its findings will not be disturbed on appeal if there is any evidence to support them.[4] Further, on appellate review, "we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment."[5]

So viewed, the record reflects that the property was sold to the Bank for $1,080,000 on August 4, 2009, pursuant to a power of sale contained in a deed to secure debt from RMB in favor of the Bank.[6] On September 1, 2009, the Bank filed a petition for confirmation of

---

[1] OCGA § 44-14-161 (b).

[2] *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180 (1), n. 1 (622 SE2d 890) (2005).

[3] (Punctuation omitted.) Id., citing *Kong v. Shearson Lehman Hutton Mtg. Corp.*, 211 Ga. App. 93, 95, n. 6 (438 SE2d 132) (1993).

[4] *Nash v. Compass Bank*, 296 Ga. App. 874, 875 (676 SE2d 28) (2009); *Wilson*, supra at 180-181 (1).

[5] (Punctuation and footnote omitted.) *Wilson*, supra at 181 (1).

[6] The deed to secure debt was granted by RMB in order to secure a promissory note in the original principal amount of $2,500,000. The promissory note was guaranteed by appellants IPP and Notrica.

the foreclosure sale under OCGA § 44-14-161. On November 27, 2009, IPP served on the Bank by mail written discovery requests, including a single request for admission, interrogatories, and request for production of documents. The request for admission stated: "Please admit that the true market value of the Property was greater than $1,080,000.00 on August 4, 2009." The Bank's responses to these pleadings, including its response to the request for admission, were due on December 30, 2009,[7] but were actually served on opposing counsel on December 31, 2009, one day late.

At the hearing on the Bank's petition, held January 6, 2010, the parties stipulated to the regularity of the sale, and the only issue was the adequacy of the sale price. The Bank requested, and the trial court granted, a one-day extension of time for filing the Bank's response to appellants' request for admission. After hearing evidence, the trial court confirmed the sale to the Bank, finding that the property brought at sale at least its true market value of $1,080,000, as required by OCGA § 44-14-161 (b). This appeal followed.

1. Appellants contend that confirmation of the sale was error because the Bank had admitted that the true market value of the property was more than $1,080,000. Appellants argue that the Bank made this admission by operation of law when it failed to respond to appellants' request for admission in a timely manner. We disagree.

At the hearing, the Bank requested an extension of time to file its response to the request for admission. Counsel for the Bank explained that he had been unable to obtain certain documents requested until December 31; that he had so advised counsel for appellants; and that counsel for appellants had agreed that the Bank could have until December 31 to file "all this stuff," that is, responses to all the pleadings, including the response to the request for admission. Counsel for appellants countered that he had agreed to an extension only as to the documents requested, not as to the request for admission. The trial court ruled that the Bank's failure to file the response to the request for admission was due to "excusable neglect"[8] and granted a one-day extension for filing the response.[9]

---

[7] See OCGA §§ 9-11-36 (a) (2) (providing for 30 days to respond to a request for admission); and 9-11-6 (a), (e) (providing for an additional three days where service is had by mail). See generally OCGA § 1-3-1 (d) (3); *Bartosz v. Chapparal Enterprises*, 271 Ga. App. 246, 248 (1) (609 SE2d 185) (2005).

[8] OCGA § 9-11-6 (b) provides that the court may grant extensions of time for filing "upon motion made *after* the expiration of the specified period, . . . where the failure to act was the result of excusable neglect." (Emphasis supplied.)

[9] See *Coolik v. Hawk*, 133 Ga. App. 626, 628 (4) (212 SE2d 7) (1974) ("the court may allow additional time where the failure to respond [to a request for admission] is (a) due to excusable neglect, and (b) is not prejudicial to the party requesting admissions"), citing *Taylor v. Hunnicutt*, 129 Ga. App. 314, 315 (199 SE2d 596) (1973) (physical precedent only) (the statute

In their briefs, both parties treat the court's action as permitting the withdrawal of the Bank's admission, rather than as the grant of an extension. Under OCGA § 9-11-36 (a), "[w]hen requests for admission are made, the matter is deemed admitted unless denied by written answer in a timely manner."[10] OCGA § 9-11-36 (b), however, "vests broad discretion in the trial court to permit withdrawal or amendment of the admission, and the trial court's ruling on this issue may be reversed only upon a showing of abuse of discretion."[11] We find no abuse of discretion here.

Under OCGA § 9-11-36 (b), a trial court may permit withdrawal or amendment of an admission made by operation of law only when both "(1) the presentation of the merits of the action will be subserved by the withdrawal or amendment; and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."[12] The Bank satisfied the first prong of this test by showing that the admitted request could be refuted by admissible evidence, and that the denial was not offered solely for purposes of delay.[13] The Bank presented the testimony of a licensed appraiser that the $1,080,000 sale price was the true market value of the property at the time of foreclosure. That the Bank's denial of the request for admission was not offered for purposes of delay can be seen from the fact that it was filed only one day late.[14] The trial court ruled that there was no prejudice to RMB in allowing the Bank to deny the request for admission. We conclude that the trial court did not abuse its discretion in so ruling, and appellants do not argue to the contrary.

Instead, appellants contend that the court was without power to permit withdrawal or amendment of the admission, because the Bank failed to move to withdraw the admission. However, as noted above, the Bank made an oral motion for a one-day extension of time to file its response to the request for admission, thus seeking relief from an admission by operation of law. Both the oral motion and counsel's argument at the hearing "plainly showed the nature of the

ᴧᴧᴌᴇ ᴌᴧᴡ' ᴌᴵᴮᴿᴧᴿᵞ

---

permitting requests for admission "places no restriction on the court's discretion to allow an extension of time after the time for reply has passed") (citation omitted).

[10] (Punctuation and footnote omitted.) *Velasco v. Chambless*, 295 Ga. App. 376 (1) (671 SE2d 870) (2008).

[11] (Citation and punctuation omitted.) *Turner v. Mize*, 280 Ga. App. 256, 257 (1) (633 SE2d 641) (2006). Accord *Velasco*, supra.

[12] (Footnote omitted.) *Brankovic v. Snyder*, 259 Ga. App. 579, 580 (578 SE2d 203) (2003). Accord *Velasco*, supra at 377 (1).

[13] See *Brankovic*, supra.

[14] See id. at 582 (as soon as defendants realized that requests for admission had been filed, they attempted to file responses).

relief sought,"[15] which the trial court was within its discretion to grant.[16]

2. Appellants contend that the trial court erred in determining that the sale price of $1,080,000 was the true market value of the property on the date of the foreclosure. We find no error.

At the confirmation hearing, both parties offered the testimony of licensed appraisers.[17] Donald B. Pardue, Jr., the Bank's appraiser, testified that he considered the true market value of the property to have been $1,080,000 on August 4, 2009, the date of the foreclosure sale. Pardue explained that his appraisal was based on comparable sales; that he concluded that the per-unit value was $55,000, resulting in a $1,320,000 value for the property (a building containing 24 apartments); and that he deducted $240,000 ($10,000 per unit) to account for necessary renovation costs, resulting in an appraised value of $1,080,000.

Appellants contend that Pardue's appraisal was flawed because the $10,000-per-unit reduction for renovation costs was based on speculation, conjecture, and hearsay. Pardue testified that this figure was provided to him by an RMB representative who had taken him through the building; however, Pardue further testified that this $10,000-per-unit reduction was based upon his 35 years of experience in looking at apartments that required rehabilitation or remodeling. Upon questioning by the court, Pardue testified that based upon his experience with apartments and his inspection of the subject property, renovation costs of $10,000 per unit were fair and reasonable and "would be a minimum." Thus, Pardue's appraisal was not made solely in reliance on the RMB representative but was based on Pardue's own experience. Pardue testified that his experience included not only appraisal work but that earlier he had served as a general contractor for an office building in the Atlanta area.

RMB offered an appraisal by Clay M. Weibel, a commercial real estate appraiser, who used a similar methodology in arriving at his opinion of the value of the property, that is, a per-unit value based on comparison sales reduced by per-unit projected renovation costs. We note that Weibel used the same figure for projected renovation costs — $240,000 or $10,000 per unit — as the Bank's expert used in his appraisal.

Although Weibel's estimate of the value of the property was higher than that given by Pardue ($1,200,000, as compared to

---

[15] (Footnote omitted.) *Sayers v. Artistic Kitchen Design*, 280 Ga. App. 223, 226-227 (2) (633 SE2d 619) (2006) (motion to open discovery was in substance one to withdraw admissions).

[16] See *Brankovic*, supra at 582-583.

[17] The parties stipulated that the appraisers were qualified as expert witnesses.

$1,080,000), Weibel's testimony supports the trial court's determination that the renovation costs would amount to $240,000, and that these costs must be accounted for in determining the true market value of the property.[18] We conclude that the trial court did not err in allowing a deduction for renovation costs in the amount of $240,000.

Because "[t]he superior court had sufficient data in evidence upon which it could apply its own knowledge and ideas so as to derive its own opinion as to the market value of the property at the time of the sale,"[19] we conclude that the trial court did not err in confirming the sale under power at issue here.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 3, 2010.

*Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed, Fletcher B. Howard,* for appellants.

*Morgan & Chakales, Robert T. Morgan, Freisem, Macon, Swann & Malone, C. Cyrus Malone III,* for appellee.

---

[18] Cf. *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 115 (1) (684 SE2d 144) (2009) (both parties' experts included a reduction for various costs in calculating appraised true market value).

[19] (Punctuation and footnote omitted.) *REL & Assocs. v. Fed. Deposit Ins. Corp.*, 304 Ga. App. 33, 35 (1) (b) (695 SE2d 370) (2010).