A10A1957. ATREUS COMMUNITIES OF AMERICA, LLC et al.
v. KEYBANK NATIONAL ASSOCIATION.

(706 SE2d 107)

DILLARD, Judge.

This appeal follows a nonjudicial foreclosure sale of property consisting of four houses and one developed lot. Appellee, KeyBank National Association, conducted the sale in August 2009 after appellants, Atreus Communities of America, LLC et al. (collectively referred to as "Atreus"),[1] defaulted on payment of a nearly $66,000,000 loan. KeyBank was the highest bidder at $480,000, and thereafter sought confirmation of the sale, which the trial court granted following a hearing.

At the confirmation hearing, Atreus did not challenge the validity of the statutory notices given, advertisements published, and/or reports filed by KeyBank regarding the foreclosure sale or that the sale was "regular,"[2] but instead argued only that the property was not purchased at its true market value (as required by OCGA § 44-14-161 (b)).[3] The trial court disagreed, holding that KeyBank carried its burden of demonstrating by a preponderance of

---

[1] The other appellants are Atreus Communities of Newnan, Inc.; Atreus Homes and Communities of America, LLC; Jonathan W. Been; Atreus Communities of New Mexico, Inc.; and AC Land & Development, LLC.

[2] *See* OCGA § 44-14-161 (a)-(c).

[3] Specifically, OCGA § 44-14-161 (b) provides that "[t]he court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."

the evidence[4] that the true market value of the subject property at the time of the foreclosure sale was indeed $480,000. On appeal, Atreus argues that the appraisal (as amended) proffered by KeyBank to the trial court for purposes of confirming the foreclosure sale was insufficient to support the true market value of the subject property. We disagree and affirm.

At the outset, we note that a party seeking to confirm a nonjudicial foreclosure sale must present the trial court with competent evidence of the subject property's true market value,[5] and the court may not confirm the sale "unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[6] Moreover, the trial judge in a confirmation hearing sits as a trier of fact, and the findings and conclusions reached by the court have the effect of a jury verdict.[7] As such, witness credibility and the weight of the evidence proffered by the parties at a confirmation hearing are to be judged by the trial court, and not this Court on appeal.[8] For this reason, we will not disturb a trial court's finding that property sold for its true market value if there is any evidence to support that decision,[9] and we view the evidence presented below in the light most favorable to the trial court's judgment.[10]

And here, the evidence proffered at the confirmation hearing showed that KeyBank's first appraisal, conducted in May 2009 (a few months before the foreclosure sale), contained admitted errors because the appraisers were only able to conduct exterior inspections of the four homes.[11] As a result of these errors, a second appraisal

---

[4] *See, e.g., Blue Marlin Dev., LLC v. Branch Banking & Trust Co.*, 302 Ga. App. 120, 120 (690 SE2d 252) (2010) (noting that a party seeking confirmation of nonjudicial foreclosure sale must prove that the subject property sold for its true market value on the date of the foreclosure sale by a preponderance of the evidence).

[5] True market value "is the price which the property will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 259 (1) (424 SE2d 889) (1992) (punctuation omitted).

[6] OCGA § 44-14-161 (b).

[7] *See, e.g., Greenwood Homes, Inc. v. Regions Bank*, 302 Ga. App. 591, 592 (692 SE2d 42) (2010) ("Value on the date of sale is a factual question to be resolved by the trier of fact." (punctuation omitted)); *Fed. Deposit Ins. Corp. v. Ivey-Matherly Constr. Co.*, 144 Ga. App. 313, 316 (1) (241 SE2d 264) (1977) ("What value is, or may have been, is a question of fact to be resolved as others are." (punctuation omitted)).

[8] *See, e.g., Foster v. Tycor, Inc.*, 267 Ga. App. 767, 769 (601 SE2d 172) (2004); *Fed. Deposit Ins. Corp.*, 144 Ga. App. at 316 (1).

[9] *See, e.g., Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 114 (684 SE2d 144) (2009); *Marett Props., L.P. v. Centerbank Mortgage Co.*, 204 Ga. App. 265, 265 (419 SE2d 113) (1992).

[10] *See, e.g., Fayette Promenade v. Branch Banking & Trust Co.*, 258 Ga. App. 323, 324 (574 SE2d 319) (2002) ("[W]e view the evidence in the light most favorable to support the trial court's judgment.").

[11] The resulting errors included a miscalculation of the total square footage of the homes by approximately 65 square feet and a failure to identify air-conditioning units that had

was conducted in January 2010 to serve as an addendum to the May 2009 appraisal and for purposes of determining the true market value of the subject property on the date of foreclosure sale (i.e., August 4, 2009).[12]

Both appraisals of the subject property were accomplished using the income-approach method of property valuation,[13] which relies upon market data to develop a series of numerical inputs that calculate the average retail value of the subject property.[14] This valuation is then discounted to account for factors such as any additional cost to complete the home, resulting in a calculation of the property's true market value.[15] And in the case sub judice, the appraiser explained his use of this method while testifying at the confirmation hearing as to the various and sundry details of the May 2009 appraisal (later amended by the January 2010 appraisal).

Atreus's challenge to the appraisals focuses on the reductions the appraiser allotted for the cost to complete the homes because,[16] despite the errors contained in the May 2009 appraisal, both appraisals ultimately concluded that the subject property's true market value was $480,000. Specifically, the cost-to-complete calculation in the May 2009 appraisal resulted in a discount of $40,000—or $10,000 per home—based on the following: (1) $4,000 for air conditioners; (2) $3,000 for appliance packages;[17] and (3) $3,000 to account for the cost and trouble of installing the air conditioners and appliance packages. And because the expert appraiser[18] based these estimated costs on

---

already been placed in the homes.

[12] Atreus repeatedly stresses that the May 2009 appraisal contained errors and that the January 2010 appraisal was conducted five months after the foreclosure sale. However, even if KeyBank relied on the May 2009 appraisal when making its bid, this is of no consequence because it is the date of the foreclosure sale that is relevant in determining the true market value of property, *not* the date of appraisal. *See, e.g., Wilson v. Prudential Indus. Props., LLC*, 276 Ga. App. 180, 182 (2) (622 SE2d 890) (2005) ("[T]rue market value is determined as of the date of the foreclosure sale.").

[13] After evaluating the pertinent markets and the subject property, the appraiser chose the income-approach method of property valuation because the two other accepted methods— *i.e.*, the cost approach and sales-comparison approach—would not render a reliable determination of the subject property's value.

[14] *See generally Hudson Trio, LLC v. Buckhead Cmty. Bank*, 304 Ga. App. 324, 326-27 (2) (696 SE2d 372) (2010) (detailing the use of the income-approach method to calculate the true market value of the subject property).

[15] *See id.*

[16] *See, e.g., Nash v. Compass Bank*, 296 Ga. App. 874, 877 (676 SE2d 28) (2009) (holding that the cost of completion is an appropriate factor in determining the true value of the subject property); *BPI Constr. Co. v. Collective Fed. Savings & Loan Ass'n*, 186 Ga. App. 324, 324 (367 SE2d 269) (1988) (same).

[17] This package included a dishwasher, oven, vent hood, and microwave.

[18] The appraiser has worked as a certified general appraiser since the early 1990s, attained the highest designation from the Appraisal Institute in 2003, appraised over one thousand residential subdivisions since 1987, and has testified as an expert approximately

personal and professional experience,[19] including that of a colleague who assisted in the preparation of the appraisal and who renovates homes,[20] this opinion was not based on sheer speculation.[21] Nevertheless, because each house already contained an air conditioner (a fact unknown to the appraiser at the time the May 2009 appraisal was prepared), this initial cost-to-complete calculation was erroneous.

KeyBank's appraiser, however, corrected the errors contained in the May 2009 appraisal in the January 2010 appraisal, which incorporated the May 2009 appraisal and specifically noted that it was an addendum that "should only be used in conjunction with [the May 2009] report." The scope of the January 2010 appraisal addendum included "a re-inspection of the property and [a] review of changes in market conditions" since the May 2009 appraisal and through the date of the foreclosure sale. And in this addendum, the appraiser accounted for the air-conditioning units already in the homes, decreasing the cost to complete the homes from $40,000 to $20,000 (or $5,000 per home), based in part on the continued need for appliance packages.[22] The appraiser then testified at the confirmation hearing as to the details of his appraisal of the subject property (as amended), and the May 2009 and January 2010 appraisal reports were entered into evidence as exhibits. Specifically, the trial court was presented with evidence that the additional $2,000 for the cost to complete the homes—in addition to the $3,000

---

three dozen times. Atreus's counsel offered no objection to these qualifications.

[19] Experts may base opinions on knowledge and experience from previous cases. *See 131 Ralph McGill Blvd., LLC v. First Intercontinental Bank*, 305 Ga. App. 493, 496 (2) (699 SE2d 823) (2010) (not error for appraiser to base appraisal of renovation costs on appraiser's own experience); *cf. Bd. of Regents of Univ. Sys. of Ga. v. Casey*, 300 Ga. App. 850, 852 (1) (686 SE2d 807) (2009) (not error for expert to base opinion on previous experiences and cases).

[20] Experts may collaborate with and consult colleagues to form opinions. *See Nash*, 296 Ga. App. at 876 (a); *see also 131 Ralph McGill Blvd.*, 305 Ga. App. at 496 (2) (not error for appraiser to consider the opinion of another when appraiser also based conclusions on his own experience).

[21] *See, e.g., Wilson*, 276 Ga. App. at 181-82 (1) (affirming trial court's confirmation of the foreclosure sale based in part upon lengthy written appraisal report); *see also Marett Props.*, 204 Ga. App. at 267 (holding that when establishing true market value of a single investment opportunity, "an expert must apply his own knowledge and ideas in order to reach an opinion as to the market value of a project"); *Fayette Promenade*, 258 Ga. App. at 326-27 (same). *Cf. Boring v. State Bank & Trust Co.*, 307 Ga. App. 93 (704 SE2d 207) (2010) (Blackwell, J., concurring fully and specially) (explaining that because no objection was made to the expert's testimony on valuation "only the sufficiency of the evidence adduced at the confirmation hearing—not the admissibility of that evidence—was preserved for our review on appeal").

[22] While Atreus argues that these cost estimates were incorrect and offered evidence of such at the hearing, the test is not whether we would have accepted appellant's conflicting appraisals "as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale." *Blue Marlin Dev.*, 302 Ga. App. at 122 (1) (punctuation omitted); *see also Hudson Trio*, 304 Ga. App. at 328 (2) (same).

cost attributed to purchasing the necessary appliance packages—resulted from (1) a portion of the original calculation of $3,000 to account for the cost and trouble of installing the appliances (sans the consideration of air conditioners), and (2) the cost of newly discovered additional repairs deemed to be necessary in each house.[23] This evidence was sufficient to support the trial court's conclusion that the appraisal (as amended) represented the true market value.[24]

Moreover, even if we shared Atreus's belief that the appraiser's recurring valuation for the subject property and cost-to-complete calculations strain credulity, the trial court was presented with additional, uncontested evidence to support its finding that the subject property sold for at least its true market value. Specifically, the appraiser testified that he received no direction whatsoever from KeyBank about the total to return when he reached $480,000 for the second time, and there was evidence that the true market value of the subject property in August 2009 may have actually been *less* than what KeyBank paid for it. Indeed, due to deterioration in market conditions between the May 2009 appraisal and the August 2009 foreclosure sale, the January 2010 appraisal addendum decreased the retail sales price of the subject homes by 3.5 percent—which was considered to be a conservative reduction—based on an approximately 13 percent decline in listing prices for other homes in the neighborhood and a 4 percent decline in market conditions for the zip code generally. Thus, had the appraiser made more aggressive assumptions and an adjustment for market conditions on the developed lot, the true market value of the subject property at the time of the foreclosure sale in August 2009 could have been well *below* $480,000.

Given the foregoing, the record contained sufficient evidence to permit the trial court to determine that the sale brought at least the true market value of the subject property, and we therefore affirm the trial court's confirmation of same.[25]

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

---

[23] These additional repairs included adding doorknobs, repairing a broken light fixture, replacing a broken mirror, fixing sheet rock damage, and fixing water damage.

[24] *See BPI Constr. Co.*, 186 Ga. App. at 324 (involving disputed cost to complete); *see also Am. Century Mortgage Inv. v. Strickland*, 138 Ga. App. 657, 659 (1) (227 SE2d 460) (1976) ("[OCGA § 44-14-161 (b)] requires the trial court to call for sufficient evidence to satisfy [it]self as to what is the true market value of the property.").

[25] *BPI Constr. Co.*, 186 Ga. App. at 324. *Compare Titshaw v. Ne. Ga. Bank*, 304 Ga. App. 712, 718 (2) (697 SE2d 837) (2010) (reversing confirmation when there was absolutely no evidence in the record to establish that the purported sale price below market value was a typographical error, as alleged by counsel); *Belans v. Bank of Am.*, 303 Ga. App. 654, 656 (2) (694 SE2d 725) (2010) (reversing confirmation when appraiser did not testify and court relied solely on statements by counsel).

YALE LAW LIBRARY

DECIDED FEBRUARY 4, 2011.

*James M. Johnson, Stephanie A. Everett*, for appellants.
*Thompson Hine, Russell J. Rogers, David L. Pool, Greenberg Traurig, Sean A. Gordon*, for appellee.