A10A1874. WINSTAR DEVELOPMENT, INC. et al. v. SUNTRUST BANK.
A10A1875. PINE GROVE BUILDERS, INC. et al. v. SUNTRUST BANK.
A10A1876. 82 ACRES, INC. et al. v. SUNTRUST BANK.

(708 SE2d 604)

MIKELL, Judge.

In these consolidated appeals, appellants Winstar Development, Inc. ("Winstar"), Pine Grove Builders, Inc. ("Pine Grove"), 82 Acres, Inc. ("82 Acres"), Robert C. Belans, and Gregory W. Shoops challenge the trial court's orders confirming the foreclosure sales of three properties that appellee SunTrust Bank ("the Bank") held as security for commercial loans to appellants.[1] After a consolidated hearing on December 21, 2009, the Superior Court of Paulding County confirmed the foreclosure sales of the properties involved in Case Nos. A10A1874 and A10A1875, entering two separate orders dated January 16, 2010. The court resumed the hearing on January 15, 2010, to conclude Case. No. A10A1876, and entered its order confirming the foreclosure sale in that case on March 8, 2010. In each case, appellants argue that the orders confirming the foreclosure sales must be reversed because service upon each appellant was insufficient. In Case No. A10A1875, appellants also argue that there was no competent evidence to support the trial court's order that the foreclosure sale was ever consummated. We consolidate these cases for disposition in a single appeal, and the facts pertinent to each foreclosure sale follow.

In Case No. A10A1874, Winstar executed two promissory notes in favor of the Bank, one in August 2006, and the other in January 2008. The notes were secured by property located in Paulding County, as evidenced by the Deed to Secure Debt and Security Agreement, which appellant Gregory W. Shoops signed on Winstar's behalf in his capacity as secretary. Shoops and appellant Robert C. Belans also guaranteed the payment of the notes to the Bank. Winstar and its guarantors defaulted on the notes, and the Bank foreclosed on the property on August 5, 2008. The Bank reported the foreclosure sale to a judge in Paulding County Superior Court and applied for confirmation. A hearing on the application was scheduled to occur on September 30, 2008, but was continued pursuant to the Bank's request. On July 9, 2009, the Bank filed a motion for service by publication on appellant Belans only, which the trial court

---

[1] In Case Nos. A10A1874 and A10A1875, the Bank was the successor to Hometown Bank of Villa Rica. In Case No. A10A1876, the Bank was the successor by merger to Community Trust Bank.

granted on August 5, 2009.

In Case No. A10A1875, Pine Grove executed a promissory note in favor of the Bank on January 10, 2007. Shoops signed the promissory note in his capacity as vice president of Pine Grove. The note was also secured by property located in Paulding County, as evidenced by the Deed to Secure Debt and Security Agreement, which Shoops signed on Pine Star's behalf in his capacity as secretary. Belans and Shoops each guaranteed the payment of the note to the Bank.[2] After Pine Grove and its guarantors defaulted on the notes, the Bank foreclosed on the property on August 5, 2008. The Bank reported the foreclosure sale and applied for confirmation. A hearing on the application was scheduled to occur on October 23, 2008, but the hearing was continued pursuant to the Bank's request. On July 9, 2009, the Bank filed a motion for service by publication on appellant Belans only, which the trial court granted on August 10, 2009.

In Case No. A10A1876, 82 Acres executed a promissory note and security deed in favor of the Bank on November 29, 2006. Belans signed the security deed as president of 82 Acres and Shoops signed as its secretary/treasurer. The note was also secured by property located in Paulding County, as evidenced by the deed. Belans and Shoops each guaranteed the payment of the note to the Bank. 82 Acres and its guarantors defaulted on the notes, and the Bank foreclosed on the property on October 7, 2008. The Bank reported the foreclosure sale and applied for confirmation in Paulding County Superior Court. The trial court scheduled a hearing on the application, which was to occur on January 27, 2009. On July 9, 2009, the Bank filed a motion for service by publication on appellant Belans only, which the trial court granted on August 5, 2009.

The trial court commenced the hearing on all three applications on December 21, 2009. Lance Robinson, a private process server utilized in the cases involving Winstar and Pine Grove (Case Nos. A10A1874 and A10A1875), testified that he went to Shoops's house at approximately 6:40 p.m. on December 15, 2009; that the lights were on and he knocked on the door to no avail; that he passed by the house again and saw that the lights were out, leading him to conclude that someone was at the house; and that a BMW fitting the description of the car that he had been given passed by him, then proceeded to pass the house. Robinson explained that another process server had been to the address seven times and had seen the BMW parked in the driveway at the house.

---

[2] The guaranty contained the following address for Shoops: 4331 Avary Pl., Douglasville, GA 30135-4973.

Robinson further testified that after the BMW passed him, he drove up a neighboring driveway to give the impression that he was visiting someone else; that the BMW then turned into Shoops's driveway but by the time he pulled into the driveway behind the BMW, the garage door was almost closed; that he knocked on the garage door and announced that he had legal papers for Shoops and Pine Grove that he was leaving outside the garage door;[3] and that he could hear a person in the garage, but no one responded. Robinson noticed that a white truck that had been following the BMW pulled into the other driveway at the house, but when he approached the white truck, the driver backed up and left. Robinson further testified that he waited around and the white truck returned, but that when the driver of the truck noticed him, the truck sped away. Robinson testified that he did not know the identity of either driver and did not actually hand the service papers to anyone. However, neighbors had told the prior process server that Shoops lived at the house; and on the front step of the house Robinson saw a package from UPS that was addressed to Shoops.

Also admitted into evidence were affidavits of service executed by Robinson, in which he averred that "on December 15, 2009, at 8:09 p.m., he served Winstar . . . by personally serving person believed to be Greg Shoops at 4331 Avary Pl., Douglasville GA 30135" with a copy of the notice of hearing.[4] A similar affidavit is included in the record with respect to Robinson's service on Shoops, individually, as well as on behalf of Pine Grove. No opposing evidence was offered by appellants.

The trial court ruled from the bench that service on Pine Grove through the Secretary of State was sufficient and that the personal service on Shoops, who had made a "diligent effort to avoid service," was also sufficient. Additionally, the court ruled that service on Belans by publication was proper. After Robinson testified again about the service on Shoops in connection with Winstar, the court also ruled that service was proper on all defendants in that case as well. Regarding 82 Acres, the record contained a sheriff's entry of service, showing that Shoops had been personally served on December 15, 2008. The address listed on the entry of service was the same as that used by Robinson to perfect service. The trial court ruled that service on all defendants in 82 Acres was proper.

---

[3] Robinson testified that he had several sets of papers to serve, four of which were addressed to Shoops, individually, three for Pine Grove, and one for Winstar. Robinson could not recall if he specifically announced that he had papers for Winstar.

[4] The record also contains an affidavit of diligence from Keith Wright, attesting that he attempted to serve Winstar on November 2, 2009, at a different address, and found a vacant building with no forwarding address.

1. *Failure to Serve Corporate Defendants and Shoops*. In all three appeals, appellants argue in their first enumeration of error that the order confirming the sale must be reversed because the Bank failed to serve notice of the hearing upon Winstar and Shoops, Pine Grove and Shoops, and 82 Acres and Shoops, respectively. We disagree.

OCGA § 44-14-161 (c) provides that "[t]he court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale." Even though the five-day notice requirement set forth in the confirmation statute supersedes the service requirements of OCGA § 9-11-4,[5] we nonetheless look to "the principles embodied in OCGA § 9-11-4 (d) [now codified at OCGA § 9-11-4 (e)] for an understanding of what personal service means."[6] The current Code provides that a corporation may be served by personal service upon an officer of the corporation, and if such service cannot be accomplished, upon the Secretary of State.[7] Additionally, as an individual, Shoops was to be served

> personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.[8]

In this case, the trial court concluded that all parties had been properly served.

> In determining whether the trial court erred in its factual finding that [the appellants were] personally served, we apply the following principles: [w]here a defendant claims there was a failure of service, the trial court has the authority to decide as a factual matter whether service has occurred. This finding will not be disturbed as long as there is some evidence to support it. Further, when a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service. The process server's return of service can only be set aside upon evidence which

---

[5] See *Vlass v. Security Pacific Nat. Bank*, 263 Ga. 296, 298-299 (2) (430 SE2d 732) (1993).

[6] *Ameribank, N.A. v. Quattlebaum*, 220 Ga. App. 345, 347 (2) (469 SE2d 462) (1996).

[7] OCGA § 9-11-4 (e) (1).

[8] OCGA § 9-11-4 (e) (7).

is not only clear and convincing, but the strongest of which the nature of the case will admit.[9]

Appellants Winstar, Pine Grove, 82 Acres, and Shoops have not met this burden.

In support of their argument that service was insufficient, appellants rely on *Cook v. Bright*.[10] In that case, the officer serving process knew the defendant lived at the residence, knocked on the door and saw someone come to the window, and then left the summons in the front door.[11] We concluded that the service was insufficient because it was not left with a person of suitable age and discretion who resided at the home, pointing out that the result may have been different had there been evidence that the defendant tried to evade service.[12] There was no evidence in *Cook* that the officer saw the defendant or talked to him through the door that the defendant refused to open. Similarly, in *Thomas v. Johnson*,[13] another case cited by appellants, we found that tacking the documents to the door was insufficient service where there was no evidence that the server saw or spoke to the defendant or that the defendant was aware of the process server's presence.[14]

Although we acknowledge that the facts in the case sub judice are not as compelling as those in cases wherein the process server actually talked to a suitable person residing in the residence who then refused service,[15] there was undisputed evidence in the record from which the trial court could have concluded that appellants were attempting to evade service.

---

[9] (Citation, punctuation and emphasis omitted.) *Newsome v. Johnson*, 305 Ga. App. 579, 581-582 (1) (699 SE2d 874) (2010). See also *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 140 (1) (b) (661 SE2d 185) (2008) ("Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them") (citation, punctuation and emphasis omitted).

[10] 150 Ga. App. 696 (258 SE2d 326) (1979).

[11] Id. at 699.

[12] Id.

[13] 205 Ga. App. 753 (423 SE2d 306) (1992).

[14] Id. at 753-754.

[15] See *Newsome*, supra at 582-583 (1) (service proper where papers left outside of door after process server verified defendant's identity through the door, but defendant refused to open the door); *Tavakolian v. Agio Corp.*, 304 Ga. App. 660, 665 (4) (697 SE2d 233) (2010) (service sufficient where person meeting the description of the defendant's wife declared that she was not the defendant and then closed the garage door and process server dropped complaint and summons on the garage floor); *Jacobson v. Garland*, 227 Ga. App. 81, 83 (1) (487 SE2d 640) (1997) (service proper where process server left papers outside of door after he spoke with the wife of the defendant, informed her that he was serving papers on her husband, and she knowingly attempted to evade service by closing the door and refusing to accept the papers); *Hickey v. Merrit*, 128 Ga. App. 764, 765 (197 SE2d 833) (1973) (service sufficient where papers left outside door after defendant was seen through the window and talked to through the door but refused to open the door).

Robinson testified that prior to his involvement in the case, another process server had been to the address seven times. Robinson had a description of the vehicle that had been parked at the address, which was a silver 3 Series BMW bearing a Georgia vanity plate, and testified that the other process server had seen the BMW parked in the upper driveway by the garage doors on each of the seven occasions that he attempted service. Additionally, Robinson knew that the neighbors had told the other process server that Shoops resided at the house, and Robinson saw a package addressed to Shoops at the door. When Robinson saw the vehicle meeting the description that he had received, he followed it but tried not to alert the BMW driver to his presence, but the driver noticed him and drove past the address of the house. Once Robinson turned into a different driveway, the BMW driver then turned into the driveway. Robinson pulled into the driveway and approached the garage door, which was not yet closed, and announced that he had papers. Robinson heard rustling in the garage, but no one responded.

> It is the duty of a defendant to accept and submit to the service of process when he is aware of the process server's purpose. It is generally held that if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons.[16]

As stated earlier, "[t]his Court will not disturb the factual finding of the trial court that service was effected as long as there is some evidence to support it."[17] Additionally, the question of whether a defendant has presented evidence "sufficient to overcome facts reflected in a return of service is a question to be resolved by the trial court as the factfinder."[18] There was no controverting evidence. Therefore, we will not disturb the trial court's finding that Winstar, Pine Grove, 82 Acres, and Shoops were properly served.[19]

2. The second error enumerated in each of the three appeals is that the trial court erred in concluding that service by publication was sufficient as to Belans.[20] Because Belans had insufficient notice of the hearing, we agree.

---

[16] (Citation, punctuation and footnote omitted.) *Jacobson*, supra.

[17] *GMAC Mtg. Corp. v. Bongiorno*, 277 Ga. App. 328, 329 (626 SE2d 536) (2006).

[18] (Citation and punctuation omitted.) *Carter v. Progressive Ins. Co.*, 246 Ga. App. 562, 564 (1) (541 SE2d 418) (2000).

[19] See *Newsome*, supra at 581-582 (1).

[20] We note that Belans has recently appeared before this court four times in appeals of orders confirming foreclosure sales. In *Belans v. Bank of America*, 303 Ga. App. 35, 39 (2) (692

At the confirmation hearing, appellants first attacked as legally insufficient the service upon Belans by publication. But in *Belans I*,[21] which was decided after the hearing in the instant case, we held that service by publication of the notice of a confirmation hearing was legally sufficient.[22] Thus, appellants do not assert this argument on appeal, arguing instead that the published advertisement for service on Belans provided no specifics as to the date or time of the hearing as is required under the confirmation statute, which argument was made before the trial court.

The statute governing service by publication, OCGA § 9-11-4 (f) (1),[23] does not require that the date and time of the confirmation hearing be published in the notice of publication. However, the statute governing notice of a confirmation hearing, OCGA § 44-14-161 (c), requires that notice of the hearing be given to the debtor at least five days prior thereto. The Bank offers no evidence to show that the notice requirements of OCGA § 44-14-161 (c) were met here, and we reject the Bank's argument that by complying with OCGA § 9-11-4 (f) (1), it satisfied the necessary requirements.

The Bank also contends that we should conclude that sufficient publication occurred in the instant case because appellants attacked the contents of a notice published in another pending action. But again, there is no evidence that the requirements of publication were met here. Accordingly, we conclude that the trial court erred when it found that Belans was served properly. Consequently, we remand to the trial court with direction that it set aside that portion of the confirmation order finding that Belans had been properly served and schedule a second confirmation hearing as to appellant Belans.[24]

---

SE2d 694) (2010) (*Belans I*), *Belans v. Bank of America*, 303 Ga. App. 654, 659 (2) (694 SE2d 725) (2010) (*Belans II*), and *Belans v. Bank of America*, 304 Ga. App. XXIV, Case No. A10A0600 (decided July 7, 2010) (unpublished opinion), we reversed orders confirming foreclosure sales because the evidence was insufficient as to the involved properties' fair market values. In *Belans v. Bank of America*, 306 Ga. App. 252 (701 SE2d 889) (2010) (*Belans III*), we affirmed the confirmation of the foreclosure sales.

[21] Supra.

[22] Id. at 38 (1).

[23] OCGA § 9-11-4 (f) (1) (C) provides, in pertinent part, that:

When the court orders service by publication, the clerk shall cause the publication to be made in the paper in which sheriff's advertisements are printed, four times within the ensuing 60 days, publications to be at least seven days apart. The party obtaining the order shall, at the time of filing, deposit the cost of publication. The published notice shall contain the name of the parties plaintiff and defendant, with a caption setting forth the court, the character of the action, the date the action was filed, the date of the order for service by publication, and a notice directed and addressed to the party to be thus served, commanding him or her to file with the clerk and serve upon the plaintiff's attorney an answer within 60 days of the date of the order for service by publication and shall bear teste in the name of the judge and shall be signed by the clerk of the court. . . .

[24] See *Quattlebaum v. Ameribank, N.A.*, 227 Ga. App. 517-518 (1) (489 SE2d 319) (1997)

3. In the remaining enumeration of error, asserted only in Case No. A10A1875, appellants contend that the trial court's finding that the foreclosure sale was consummated is not supported by any competent evidence. Specifically, appellants contend that the Bank was required to admit into evidence the deed under power of sale from the foreclosure sale. We disagree.

OCGA § 44-14-161 (c) requires the trial court to pass on the legality of the notice, the advertisement, and the regularity of the sale. "When a power of sale is exercised all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith."[25] In the case sub judice, the Bank presented the testimony of attorney Laura Ketchum that she witnessed the foreclosure sale at issue; that the foreclosure sale occurred on August 5, 2008, outside the annex of the Paulding County courthouse; that the sale consisted of several lots, which Ketchum identified by their lot numbers; that the foreclosure notice was read in its entirety and the sale was opened for bidding; the Bank submitted an opening bid of $220,000; and that there were no other bidders. Accordingly, we conclude that there was evidence to support the trial court's finding that the sale was consummated.

Appellants cite no contravening authority in support of their argument that the only competent evidence that can establish the regularity of the sale is the deed under power of sale. In their reply brief, appellants cite *Champs-Elysses v. Fulton Fed. Savings &c.*[26] for the proposition that one must look to acts occurring before and after a sale to determine the regularity of the sale.[27] But *Champs-Elysses* involved the cancellation of a deed caused by a buyer's failure to pay the purchase price after the sale.[28] It does not mandate the filing of the deed under power of sale to establish the regularity of a sale in accordance with OCGA § 44-14-161 (c). Thus, this enumeration of error fails.

*Judgments affirmed in part and reversed in part in Case Nos. A10A1874, A10A1875 and A10A1876, and cases remanded for a confirmation hearing as to appellant Belans. Smith, P. J., and Adams, J., concur in judgment only.*

---

(physical precedent only) (trial court could conduct a second confirmation hearing as to party who did not receive sufficient notice of first confirmation hearing), aff'd, *Ameribank, N.A. v. Quattlebaum*, 269 Ga. 857 (505 SE2d 476) (1998).

[25] (Punctuation and footnote omitted.) *Hudson Trio, LLC v. Buckhead Community Bank*, 304 Ga. App. 324, 329 (3) (696 SE2d 372) (2010).

[26] 247 Ga. 127 (274 SE2d 482) (1981)

[27] Id. at 129.

[28] Id.

DECIDED MARCH 23, 2011.

*Schreeder, Wheeler & Flint, John A. Christy, Philip R. Green*, for appellants.

*Husch, Blackwell & Sanders, Camden B. Scearce, Jr., Caroline B. Stefaniak, Timothy L. Mickel*, for appellee.