A11A0753. BATTLE PROPERTIES, INC. et al. v. BRANCH BANKING AND TRUST COMPANY.
(712 SE2d 625)

MIKELL, Judge.
This case arises from the applications for confirmation of two foreclosure sales filed pursuant to OCGA § 44-14-161 by Branch Banking and Trust Company ("BB&T") against Battle Properties, Inc. and Brady F. Battle, who guaranteed the underlying promissory notes. Appellants appeal the trial court's final order confirming the sale of two parcels in the combined amount of $576,000, challenging the trial court's valuation of the property for failing to consider the

"true" market value of each of the properties as an individual parcel. For the reasons set forth below, we affirm.

In confirming a nonjudicial foreclosure sale under OCGA § 44-14-161, the trial court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale. In such proceedings, the trial court sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict. Thus, we will not disturb the trial court's decision if there is any evidence to support it. Additionally, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment.[1]

Viewed in the proper light, the record shows that Battle Properties executed two promissory notes dated October 6, 2006, in favor of BB&T in the original principal amounts of $1,287,360 and $944,640. Each promissory note was secured by a separate parcel of property located in the Carrington Park subdivision in Gwinnett County, as evidenced by the Deeds to Secure Debt and Security Agreements. The first parcel contained eight townhome lots, and the second parcel contained sixteen townhome lots. Battle Properties defaulted on the notes, and BB&T elected to declare the outstanding debt immediately due and payable. BB&T thereafter foreclosed on the parcels under power of sale provisions contained in the deeds to secure debt. On September 2, 2008, both parcels were sold at auction at separate foreclosure sales in Gwinnett County. BB&T, which bid on both parcels, purchased the first parcel for $192,000 and the second for $384,000 for a total of $576,000.

On September 30, 2008, BB&T reported the sales to a judge in the Superior Court of Gwinnett County and applied for confirmation of the two sales pursuant to OCGA § 44-14-161. At the hearing, both parties presented evidence from valuation experts. Appellants presented the testimony of Larry Thomas in support of their contention that the combined true market value of both parcels was $816,000. BB&T presented the testimony of Michael L. Hunter in support of its contention that the two parcels sold at the foreclosure sale for more than their combined true market value. In completing their valuations of the twenty-four lots, both experts assumed that the parcels

---

[1] (Punctuation and footnotes omitted.) *The Hudson Trio v. The Buckhead Community Bank*, 304 Ga. App. 324-325 (696 SE2d 372) (2010).

would be sold in bulk in a single transaction to one investor. Thomas utilized the "sales comparison" approach to value the properties at $34,000 per lot on the date of sale. Hunter employed the discounted cash flow model, which considered the depressed market conditions in the subject area at the time of sale, to conclude that each lot was worth $23,958 as of the date of the sale. Hunter testified that because all of the lots in question were in the same subdivision and were similar in characteristic and value, the appropriate methodology for determining the value of the properties was to determine an individual lot value and then multiply that value by the number of lots under each of the two notes.[2]

After the hearing, the trial court entered an order confirming the foreclosure sales. In its order, the trial court determined that the properties sold for their true market values by adopting Hunter's valuation of $23,958 for each lot and multiplying that number by the number of lots sold in the two foreclosure sales. The trial court credited Hunter's testimony and appraisal as providing the most accurate method of determining the true market value because Hunter utilized the discounted cash flow analysis to determine the properties' true market value in the declining real estate market conditions of 2008. The trial court discredited Thomas's testimony that each lot was worth $34,000 for several reasons: two of the sales Thomas relied upon were single-family home lots, and not townhome lots; Thomas used an insider transaction that was not arms length in his analysis as a comparable sale; and several of the comparable sales cited by Thomas reflected prices agreed to a year before the 2008 sale date. The trial court further noted that BB&T bid even more than the true market value of the properties at the foreclosure sale.

In their sole enumeration of error, appellants argue that the trial court erred in confirming the foreclosure sales because the evidence presented was insufficient to establish that BB&T met its burden to prove that the properties sold for their true market value. Appellants argue that BB&T failed to prove the value of the two properties as separate parcels and thus, it could not meet its burden to establish that each of these properties independently sold for its true market value.[3] We disagree.

The language of OCGA § 44-14-161 (b) "does not preclude any specific method of property appraisal."[4] Thus, the trial court's

---

[2] To determine the true market value, Hunter multiplied $23,958 (his per lot valuation) by 24 lots (the total number of lots sold) to reach a total of $574,992. He then rounded his figure up to $575,000.

[3] See, e.g., *First Nat. Bank &c. v. Childress-Ross Properties*, 189 Ga. App. 765 (377 SE2d 533) (1989).

[4] (Footnote omitted.) *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 115 (2) (684

decision to adopt Hunter's valuation method of calculating the true market value of the properties together, rather than as two separate parcels, is not in error.

> On appellate review, the test is not whether this court would have accepted [appellants'] expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale. Where the evidence is in conflict as to the market value of the property, the trial court's findings will be affirmed if they are supported by any evidence and are not clearly erroneous.[5]

The trial court's order found Hunter's appraisal and testimony assigning a true market value of $23,958 per lot to be more accurate than Thomas's valuation because Hunter took the depressed real estate market conditions of 2008 into consideration when assessing the properties' value. In contrast, Thomas's appraisal was discredited by the trial court for utilizing the sales of single-family lots as comparable sales for townhome lots as well as utilizing comparable sales from 2007 without accounting for market depreciation appropriately. Although Hunter's appraisal did not specifically provide the separate true market value for each parcel of lots, his testimony and appraisal provided the methodology by which the separate value of each parcel could be obtained, i.e., by multiplying the true market value of each lot by the number of lots in each parcel. Further, it is clear from the appraisal reports and testimony of both experts that the valuation of each parcel would not change if they were sold separately or together as a bulk transaction. Thus, we find that there was evidence in the record to support the trial court's finding that the two properties sold for their true market value at foreclosure sale.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED JUNE 21, 2011.

*Schreeder, Wheeler & Flint, Philip R. Green, John A. Christy*, for appellants.

---

SE2d 144) (2009). Cf. *Wheeler v. Coastal Bank*, 182 Ga. App. 112 (354 SE2d 694) (1987). See generally *Marion G. Davis, Inc. v. Cameron-Brown Co.*, 177 Ga. App. 646 (340 SE2d 216) (1986).

[5] (Punctuation and footnotes omitted.) *The Hudson Trio*, supra at 328 (2).

*Greenberg Traurig, Sean A. Gordon*, for appellee.