**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 5, 2013**

# In the Court of Appeals of Georgia

A12A2163. RIVER FOREST, INC. et al v. UNITED BANK.

A12A2164. RIVER FOREST, INC. et al v. UNITED BANK.

RAY, Judge.

In these consolidated appeals, appellants River Forest, Inc. and David Aldridge challenge the trial court's orders confirming the non-judicial foreclosure sale of several properties that appellee United Bank (the "Bank") held as security for a commercial loan to appellants. In A12A2163, appellants contest the foreclosure of four lots adjacent to the river in the River Forest subdivision in Monroe county (the "Four River Lots"). Appellants contend that the trial court's finding that the Four River Lots sold for their true market value is not supported by any evidence. In A12A2164, appellants contest the foreclosure of eight commercial lots located just outside the entrance of River Forest subdivision in Monroe County and one

residential lot, identified as Lot R-34, located within the River Forest subdivision (collectively, the "Nine Lots"). Appellants contend that the trial court erred in confirming the foreclosure of the Nine Lots, arguing that the Bank did not prove that the eight commercial properties sold for "at least their true market value under the usual market conditions of sales of commercial property." The appeals have been consolidated for disposition in a single opinion, and finding no error, we affirm.

In confirming a non-judicial foreclosure sale under OCGA § 44-14-161, the trial court "shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale."[1] The trial judge in a confirmation proceeding "sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict."[2] Thus, "witness credibility and the weight of the evidence proffered by the parties at a confirmation hearing are to be judged by the

---

[1] OCGA § 44-14-161 (b). True market value "is the price which the property will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 259 (1) (424 SE2d 889) (1992) (citation and punctuation omitted).

[2] (Footnote omitted.) *The Hudson Trio, LLC v. The Buckhead Community Bank*, 304 Ga. App. 324, 325 (696 SE2d 372) (2010).

2

trial court, and not this Court on appeal."[3] For this reason, we will not disturb the trial court's decision if there is any evidence to support it,[4] and we view the evidence in the light most favorable to the trial court's judgment.[5]

So viewed, the record shows that in 2009, River Forest and David Aldridge, as a personal guarantor, executed a promissory note (the "Note") in favor of the First National Bank of Barnesville, United Bank's successor-in-interest. The Note was secured by two security deeds, the first secured by the Nine Lots at issue in A12A2164, and the second secured by the Four River Lots at issue in A12A2163. River Forest defaulted on the Note, and the Bank elected to declare the outstanding debt immediately due and payable.

The Bank then foreclosed on the Nine Lots and the Four River Lots under power of sale provisions contained in the deeds to secure debt. At the foreclosure sale, the Bank purchased the Four River Lots for $121,500, and the Nine Lots for $105,000. The Bank reported the sales to a judge in the Superior Court of Monroe

---

[3] (Footnote omitted.) *Atreus Communities of America v. KeyBank Nat. Assn.*, 307 Ga. App. 716, 717 (706 SE2d 107) (2011).

[4] *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 113 (684 SE2d 144) (2009).

[5] (Footnote omitted.) *The Hudson Trio, LLC*, supra.

County and applied for confirmation of the sales pursuant to OCGA § 44-14-161. After a consolidated hearing, the trial court confirmed the sales.

1. In A12A2163, the appellants' sole enumeration of error is that the trial court erred in finding that the Four River Lots sold for their true market value when the written appraisal of the Bank's expert exceeded the amount bid by the Bank at the foreclosure sale. This argument is without merit.

At the hearing, the parties presented competing expert testimony as to the value of the Four River Lots at the time of the foreclosure sale. Appellants' appraiser opined that the property's true market value was $250,000. The Bank introduced written appraisal reports as well as expert testimony from Ken Fletcher, their real estate appraisal expert. Fletcher concluded in his amended written appraisal and in his testimony at trial that the property's value was $123,000. Previously, however, Fletcher had informed the Bank in his initial written appraisal that the true market value of the Four River Lots was $121,500, and the Bank relied upon this initial valuation when determining the purchase price of the property at the foreclosure sale. Fletcher explained the $1,500 difference by testifying that, in preparing for the hearing, he noticed a mathematical error in his calculations, which he corrected in the revised version of his appraisal report.

4

Appellants argue that the Bank presented no evidence that the Four River Lots sold for their true market value because the Bank purchased the Four River Lots for $121,500, the amount reflected in Fletcher's original written appraisal, and not the $123,000 reflected in the amended appraisal. However, Fletcher testified at the hearing that $1,500 difference between the values was within the range of the true market value of the property because "anywhere within a few thousand dollars indeed is accurate." He explained that when appraising a property, it is possible to "get into a rounding situation" and that "[w]e're not that accurate in this business." Thus, contrary to appellants' argument, there is some evidence to support the trial court's finding that the property sold for at least its true market value. "On appellate review, the test is not whether this [C]ourt would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale."[6]

---

[6] (Punctuation and citation omitted.) *Eayrs v. Wells Fargo Bank, N.A.*, 311 Ga. App. 504, 508 (5) (716 SE2d 561) (2011).

The case cited by appellants, *Wheeler v. Coastal Bank*,[7] is inapposite. In *Wheeler*, this Court reversed confirmation of a foreclosure sale where the evidence presented was insufficient for the trial judge to ascertain that the foreclosure sale price represented at least the true market value of the property when both appraisers testified that the value of the property significantly exceeded the purchase price.[8] Unlike in *Wheeler*, the Bank's appraiser in the present case agreed that the $121,500 purchase price would be "within the range of true [market] value" of the property.

2. In A12A2164, appellants contend that the trial court erred in confirming the foreclosure sale of the Nine Lots because the Bank failed "to prove that the [e]ight [c]ommercial [l]ots sold for at least their true market value under the usual market conditions for sales of commercial property."[9]

As stated above, the Nine Lots are comprised of one residential lot, subject to several restrictive covenants, located within the River Forest subdivision, and eight commercial lots, not subject to those covenants, located just outside the subdivision.

---

[7] 182 Ga. App. 112 (354 SE2d 694) (1987).

[8] Id. at 114 (1).

[9] As stated above, the ninth lot foreclosed in A12A2164 was a residential lot located within the subdivision.

At the confirmation hearing, appellants' expert appraiser opined that the Nine Lots had a true market value of $265,000. Fletcher, the Bank's appraisal expert, testified that he prepared an appraisal report for the Nine Lots and found that their true market value was $105,000.

Fletcher testified that he concluded that the "highest and best use for [the eight commercial] lots [is] to be residential," and that the zoning laws in the area would allow residential usage of those lots. Fletcher explained that the market for commercial property in that area had not ripened yet, that the eight commercial lots had been on the market for since 2004 without a buyer, and that "people would be apt to buy [the property for residential uses] way before it will sell as a commercial lot." Based upon these conclusions, Fletcher testified that, utilizing the sales-comparison approach, he determined the retail value of the Nine Lots was $255,000 and then, to determine the true market value, applying the discount cash-flow methodology, he discounted that value to $105,000 because of market conditions.

In contrast, appellants' expert determined that the best use of the eight commercial lots would be as commercial property, and utilizing the sales comparison approach, he determined that the retail value of the Nine Lots was $265,000.

Appellants' expert further testified that it was not necessary to discount that value further to reach the property's true market value.

Appellants argue that Fletcher inappropriately used only residentially zoned lots within the River Forest subdivision as comparable sales when appraising the Nine Lots. However, OCGA § 44-14-161 (b) "does not preclude any specific method of property appraisal."[10] And, as stated above,

> [o]n appellate review, the test is not whether this [C]ourt would have accepted appellants' expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale. Where the evidence is in conflict as to the market value of the property, the trial court's findings will be affirmed if they are supported by any evidence and are not clearly erroneous.[11]

Thus, the trial court's decision to adopt Fletcher's determination that the highest and best use of the Nine Lots would be for residential use, and his valuation method of calculating the retail value of the property by utilizing the sales comparison approach

---

[10] (Punctuation and footnote omitted.) *Battle Properties, Inc. v. Branch Banking and Trust Co.*, 310 Ga. App. 217, 219 (712 SE2d 625) (2011).

[11] (Punctuation and footnotes omitted.) Id. at 220.

and then discounting that value to achieve the property's true market value, is not in error.[12]

3. Appellants' final enumeration is that the trial court erred in confirming the foreclosure sale of the Nine Lots because "the underlying debt was consolidated and otherwise inextricably intertwined with the January 3, 2012 foreclosure sale of the Four River Lots and that the Bank failed to prove that the Four River Lots sold for at least their true market value." However, this enumeration is rendered moot by our holding in Division 1 affirming the confirmation of the Four River Lots.[13]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[12] Id. at 220.

[13] Compare *Ward v. Pembroke State Bank*, 212 Ga. App. 322, 324 (441 SE2d 691) (1994) (finding that two debts, held by the same creditors, and owed by the same debtor were "inextricably intertwined," and thus, "a foreclosure of one affects the other.")